2014 CO 63

In the MATTER OF the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE FOR 2013–2014 #90.

Mizraim S. Cordero and Scott Prestidge, Petitioners/Cross–Respondents,

v.

Caitlin Leahy and Gregory Diamond, Respondents/Cross–Petitioners,

and

Suzanne Staiert, Daniel Domenico, and Jason Gelender, Title Board.

In the Matter of the Title, Ballot Title and Submission Clause for 2013–2014 #93.

Mizraim S. Cordero and Scott Prestidge, Petitioners,

v.

Caitlin Leahy and Gregory Diamond, Respondents,

and

Suzanne Staiert, Daniel Domenico, and Jason Gelender, Title Board.

Supreme Court Case No. 14SA121
Supreme Court Case Nos. 14SA124

Supreme Court of Colorado.

June 30, 2014

Attorneys for Petitioner: Hogan Lovells US LLP, Chantell Taylor, Elizabeth H. Titus, Denver, CO.

Attorneys for Respondents: Heizer Paul LLP, Martha M. Tierney, Edward T. Ramey, Denver, CO.

Attorneys for Ballot Title Board John W. Suthers, Attorney General, Sueanna P. Johnson, Assistant Attorney General, Denver, Colorado.

JUSTICE MÁRQUEZ delivered the Opinion of the Court.

¶ 1 In this opinion, we review the actions of the Title Board in setting titles and ballot title and submission clauses (collectively, "titles") for Initiatives 2013–2014 # 90 and # 93 (collectively, "Proposed Initiatives").[1] We hold that each of the Proposed Initiatives contain one subject—the expansion of local governments' authority to enact laws regulating oil and gas development that are more restrictive than state law. We also hold that the titles set by the Title Board satisfy the clear title requirement because they are not misleading and they fairly reflect the pur-

---

1. The texts and titles of Initiatives # 90 and # 93 are attached as Appendices A and B, respective-ly.

pose of the Proposed Initiatives. We therefore affirm the actions of the Title Board.

## I. Facts and Procedural History.

¶ 2 Caitlin Leahy and Gregory Diamond ("Proponents") are the designated proponents of the Proposed Initiatives. These initiatives are substantially similar in language, and are alternative versions of a single measure Proponents seek to place on the ballot for the 2014 general election.[2] Each initiative would amend the Colorado Constitution by creating article XXX, which would authorize local governments to enact laws regulating oil and gas development that are more restrictive than state law. The principal difference[3] between the two initiatives is that Initiative # 90 states that the authority of local governments to regulate oil and gas development "includes the ability to enact *limits*," whereas Initiative # 93 states that the authority includes "the ability to enact *prohibitions or limits*." (Emphasis added). Both initiatives provide that the provisions of the proposed article XXX apply to "every Colorado city, town, county, and city and county, notwithstanding any provision of article XX, or section 16 of article XIV, of the Colorado constitution." Finally, both initiatives state that the laws enacted pursuant to the proposed article XXX are not a taking of private property and do not require the payment of just compensation pursuant to sections 14 and 15 of article II of the Colorado Constitution.

¶ 3 On March 21, 2014, Proponents submitted a final version of the Proposed Initiatives to the Secretary of State. On April 3, 2014, the Title Board conducted hearings for each initiative and set titles in accordance with section 1–40–106(1), C.R.S. (2013). On April 10, 2014, Mizraim Cordero and Scott Prestidge ("Petitioners") filed motions for rehearing, arguing that the Proposed Initiatives violated the single subject requirement and that the titles failed to describe important

aspects of the measures and contained an impermissible catch phrase.

¶ 4 Following a rehearing on April 16, 2014, the Title Board concluded that the Proposed Initiatives contained a single subject, but modified the titles in response to concerns raised by the Petitioners. Specifically, the Title Board removed the term "hydraulic fracturing" from both titles, and removed the phrase "prohibit or" from the title for Initiative # 93, upon Proponents' oral request.

¶ 5 Petitioners now raise several challenges to the Title Board's actions under section 1–40–107(2), C.R.S. (2013). Petitioners contend that the Title Board erred in setting the titles because the Proposed Initiatives contain multiple subjects in violation of article V, section 1(5.5) of the Colorado Constitution and section 1–40–106.5, C.R.S. (2013). In addition, Petitioners contend that the titles of the Proposed Initiatives are misleading because: (1) they do not reflect the definition of "oil and gas development"; and (2) Initiative # 93 omits the term "prohibit."

¶ 6 Proponents filed a cross-petition challenging the Title Board's removal of the term "hydraulic fracturing" from the title for Initiative # 90.

## II. Standard of Review

■ ¶ 7 In reviewing Title Board decisions, "we employ all legitimate presumptions in favor of the propriety of the Board's actions." *In re Title, Ballot Title & Submission Clause for 2011–2012 No. 3*, 2012 CO 25, ¶ 6, 274 P.3d 562, 565; *In re Title, Ballot Title & Submission Clause for 2009–2010 No. 45*, 234 P.3d 642, 645 (Colo.2010). We will only overturn the Title Board's finding that an initiative contains a single subject in a clear case. *In re 2011–2012 No. 3*, 274 P.3d at 565.

---

**2.** Other versions of this measure are Initiatives 2013–2014 # 91 and # 92. The titles for these initiatives were affirmed by this court without opinion in 14SA120 and 14SA123, respectively.

**3.** Initiative # 93 also contains section 1(c), which states that "the citizens of local communities

have historically relied upon local governments to regulate local land uses and to minimize potential land use conflicts between industrial development and residential development." Initiative # 90 does not include this language.

¶ 8 The Title Board is vested with considerable discretion in setting the title and the ballot title and submission clause. *In re Title, Ballot Title & Submission Clause, & Summary Pertaining to Proposed Initiative on Parental Choice in Educ.*, 917 P.2d 292, 294 (Colo.1996). We will reverse the Title Board's decision only if a title is insufficient, unfair, or misleading. *In re 2009–2010 No. 45*, 234 P.3d at 648; *see also In re Title, Ballot Title & Submission Clause, & Summary for 1999–2000 No. 29*, 972 P.2d 257, 266 (Colo.1999) (observing that this court will reverse a title only if it contains a "material omission, misstatement, or misrepresentation") (internal quotation marks omitted).

¶ 9 In our limited review of the Title Board's actions, we do not address the merits of the proposed initiatives nor suggest how they might be applied if enacted. *In re 2011–2012 No.3*, 274 P.3d at 565. However, we must examine their wording to determine whether the initiatives and their titles comport with the single subject and clear title requirements. *In re Title, Ballot Title & Submission Clause, & Summary for 2005–2006 No. 75*, 138 P.3d 267, 271 (Colo.2005). In conducting this limited inquiry, we employ the general rules of statutory construction and give words and phrases their plain and ordinary meaning. *In re Title, Ballot Title & Submission Clause for 2007–2008 No. 17*, 172 P.3d 871, 874 (Colo.2007).

## III. Analysis

### A. Single Subject Requirement

¶ 10 Petitioners assert that the Title Board lacked authority to set the titles because the Proposed Initiatives contain multiple subjects in violation of the single subject requirement in article V, section 1 (5.5) of the Colorado Constitution, which provides:

> No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more

than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls. *See also* § 1–40–106.5(1)(a), C.R.S. (2013) (addressing the constitutional single subject requirement).

¶ 11 The single subject requirement serves two functions: (1) "[t]o forbid the treatment of incongruous subjects in the same measure, especially the practice of putting together in one measure subjects having no necessary or proper connection, for the purpose of enlisting in support of the measure the advocates of each measure, and thus securing the enactment of measures that could not be carried upon their merits"; and (2) "[t]o prevent surreptitious measures and apprise the people of the subject of each measure, that is, to prevent surprise and fraud from being practiced upon voters." § 1–40–106.5(1)(e). Thus, "the subject matter of an initiative must be necessarily and properly connected rather than disconnected or incongruous." *In re Title, Ballot Title & Submission Clause for 2011–2012 No. 3*, 2012 CO 25, ¶ 9, 274 P.3d 562, 565 (internal quotation marks and citation omitted). An initiative violates the single subject requirement where it relates to more than one subject and has at least two distinct and separate purposes. *Id.* (citing *People ex. rel. Elder v. Sours*, 31 Colo. 369, 403, 74 P. 167, 177 (1903)). Conversely, a proposed initiative that "tends to affect or carry out one general objective or purpose presents only one subject," and "provisions necessary to effectuate the purpose of the measure are properly included within its text." *In re Title, Ballot Title & Submission Clause, & Summary for 1999–2000 No. 256*, 12 P.3d 246, 253 (Colo. 2000).

¶ 12 Because the Title Board "is vested with considerable discretion in setting the title [and] ballot title and submission clause," in reviewing actions of the Title Board, "we must liberally construe the single-subject requirements for initiatives." *In re Title, Ballot Title & Submission Clause, & Summary for Proposed Initiative "1996–17"*, 920 P.2d 798, 802 (Colo.1996) (per curiam).

We also liberally construe the single subject requirement to "avoid unduly restricting the initiative process." *In re Title, Ballot Title & Submission Clause for 2009–2010 No. 24*, 218 P.3d 350, 353 (Colo.2009).

### 1. The Titles Satisfy the Single Subject Requirement

¶ 13 The Proposed Initiatives expand local governments' authority to enact laws regulating oil and gas development that are more restrictive than state law. Section 1 of each initiative provides the rationale for the measure by setting forth certain findings and declarations, namely: "the conduct of oil and gas development may impact public health, safety, welfare and the environment"; "any impacts are experienced most directly by local communities"; and "to preserve the public's health, safety, welfare, and the environment, the people desire to expand the authority of local governments by vesting in them the right to regulate oil and gas development." Section 1 of Initiative # 93 adds an additional declaration that "the citizens of local communities have historically relied upon local governments to regulate local land uses and to minimize potential land use conflicts between industrial development and residential development."

¶ 14 Section 2 of each initiative describes the grant of authority and the scope of that grant of authority. Specifically, section 2 defines "oil and gas development" to mean "exploration for and production of Colorado's oil, gas, other gaseous and liquid hydrocarbons, and carbon dioxide." It vests in each local government "the right, power, and authority ... to regulate oil and gas development within their geographic borders" and provides that local enactments "may be more restrictive and protective of a community's health, safety, welfare, and environment" than state laws or regulations. It provides that the proposed article XXX would apply to every "city, town, county, and city and county" in Colorado. The Proposed Initiatives differ slightly in that Initiative # 93 provides that this "right, power, and authority" to regulate includes the ability to enact *"limits"* on oil and gas development, whereas Initiative # 90 refers to *"prohibitions or limits"* on such development. (Emphasis added).

¶ 15 Section 3 of each initiative declares that "any law, regulation, prohibition, or limit enacted pursuant to this article is not a taking of private property and does not require the payment of compensation pursuant to sections 14 and 15 of article II of the Colorado constitution." Finally, section 4 of each initiative states that the measure is self-executing and its provisions are severable. Section 4 also provides that if any law enacted under the authority granted in the initiative conflicts with a state law, the more restrictive and protective law governs.

¶ 16 Petitioners contend that the Proposed Initiatives contain multiple subjects. In addition to expanding local governments' authority to enact laws regulating oil and gas development, Petitioners contend that the initiatives: (1) exempt local governments from complying with the requirements of article XX and section 16 of article XIV of the Colorado Constitution; (2) change the legal standard used to determine the validity of a local law that conflicts with a state law; and (3) deprive property owners of the rights and protections granted under section 14 and 15 of article II of the Colorado Constitution. We disagree.

¶ 17 Petitioners overstate the breadth of the Proposed Initiatives. The Proposed Initiatives do not broadly change constitutional home rule provisions, the preemption doctrine, or takings provisions; rather, the initiatives affect these constitutional provisions and doctrines only inasmuch as they directly relate to the subject matter of the Proposed Initiatives—the expansion of local governments' authority to enact laws regulating oil and gas development that are more restrictive than state law. However, "[w]e have never held that just because a proposal may have different effects ... it necessarily violates the single-subject requirement." *In re 1999–2000 No. 256*, 12 P.3d at 254. Indeed, "[t]he effects this measure could have on Colorado ... law if adopted by voters are irrelevant to our review of whether [the proposed initiative] and its Titles contain a single subject." *In re 2011–2012 No. 3*, ¶ 20 274 P.3d at 568 n. 2.

¶ 18 First, any effect the Proposed Initiatives would have on Colorado's constitutional home rule provisions does not constitute a separate subject. The alteration of the existing power and authority of home rule and statutory cities to enact certain regulations pertaining to the central purpose of the initiative does not violate the single subject requirement. Cf. *In re 1999–2000 No. 256,* 12 P.3d at 254 (holding that the curtailment of home rule powers over development is a necessary result of the measure's central purpose to manage development, and thus is not a separate subject). The Proposed Initiatives identify the local government entities, i.e., "every Colorado city, town, county, and city and county," that have authority to enact more restrictive regulations on oil and gas development pursuant to the initiatives. The designation of the government entities that hold the regulatory power authorized under the initiatives is necessarily and properly connected to the central purpose of the measures. To the extent that this designation has an effect on article XX and section 16 of article XIV of the Colorado Constitution, the effect is limited to local enactments regulating oil and gas development made under the authority of the Proposed Initiatives.

¶ 19 Similarly, any effect the Proposed Initiatives would have on Colorado's preemption doctrine does not constitute a separate subject. Indeed, the central purpose of the initiatives is to grant local governments the authority to enact *more restrictive* regulations on oil and gas development within their respective jurisdictions. Thus, that the Proposed Initiatives declare that more restrictive regulations enacted under the initiatives would govern over conflicting state laws is necessarily and properly connected to the initiatives' central purpose. *Cf. In re Title, Ballot Title & Submission Clause, & Summary for 1997–1998 No. 112,* 962 P.2d 255, 256 (Colo.1998) (per curiam) (rejecting single subject challenge to an initiative that required state laws and regulations regarding livestock to be uniform and that deemed existing laws and regulations that violated the uniformity requirement to be unconstitutional).

¶ 20 Finally, as stated above, the Proposed Initiatives declare that "[a]ny law, regulation, prohibition, or limit enacted pursuant to this article is not a taking of private property and does not require the payment of compensation pursuant to sections 14 and 15 of article II of the Colorado constitution." Petitioners contend that this change to the property rights of mineral owners constitutes a separate subject. To the contrary, the "not a taking" provision applies only to those regulations enacted under the authority granted in the initiatives. Nothing the Proposed Initiatives indicates any broader reach of the "not a taking" provision. Rather, this provision is necessarily and properly connected to—if not completely dependent upon—the authority to enact local regulations conferred under the Proposed Initiatives.

¶ 21 The crux of Petitioners' argument is that the "not a taking" provision is a bad policy choice. Petitioners assert that under the "not a taking" provision, "liberties and property rights of minerals owners are affected in a manner that is unprecedented in this state." Petitioners contend that they "are aware of no other Colorado constitutional provision, law or regulation which … allows for the taking of property for a private use or that allows for any takings without just compensation." However, in determining whether a proposed initiative comports with the single subject requirement, we do not address the merits of the proposed initiative or predict how it may be applied if adopted by the electorate. *In re Title, Ballot Title & Submission Clause for 2007–2008 No. 62,* 184 P.3d 52, 58 (Colo.2008). Whether a proposed initiative is a "bad idea" is not the test of whether it meets the single subject requirement.

¶ 22 In short, we hold that the Proposed Initiatives contain one subject—the expansion of local governments' authority to enact laws regulating oil and gas development that are more restrictive than state law. The initiatives' effect, if any, on constitutional home rule provisions, the preemption doctrine, or the takings provisions extends no further than the local enactments regulating oil and gas development that would be permitted under the Proposed Initiatives.

## B. Clear Title Requirement

¶ 23 The Colorado Constitution dictates that an initiative's single subject shall be clearly expressed in its title. *See* Colo. Const. art. V, § 1(5.5); *In re Title, Ballot Title & Submission Clause for 2011–2012 No. 45*, 2012 CO 26, ¶ 21, 274 P.3d 576, 581. The title and submission clause should enable the electorate, whether familiar or unfamiliar with the subject matter of a particular proposal, to determine intelligently whether to support or oppose such a proposal. *In re Title, Ballot Title & Submission Clause for 2009–2010 No. 45*, 234 P.3d 642, 648 (Colo. 2010) (internal quotation marks and citations omitted). When it sets a title, the Title Board "shall consider the public confusion that might be caused by misleading titles and shall, whenever practicable, avoid titles for which the general understanding of the effect of a 'yes/for' or 'no/against' vote will be unclear." § 1–40–106(3)(b), C.R.S. (2013).[4] The title "shall correctly and fairly express the true intent and meaning" of the initiative. *Id.*

¶ 24 The Title Board is given discretion in resolving interrelated problems of length, complexity, and clarity in setting a title and ballot title and submission clause. *In re Title, Ballot Title & Submission Clause, & Summary Clause for a Petition on Sch. Fin.*, 875 P.2d 207, 212 (Colo.1994). The Title Board's duty in setting a title is to summarize the central features of a proposed initiative; in so doing, the Title Board is not required to explain the meaning or potential effects of the proposed initiative on the current statutory scheme. *See id.*

¶ 25 When reviewing a challenge to the title and ballot title and submission clause, we employ all legitimate presumptions in favor of the propriety of the Title Board's actions. *In re 2009–2010 No. 45*, 234 P.3d at 645. We will not consider whether the Title Board set the best possible title. *Id.* at 648. Rather, the title must fairly reflect the proposed initiative such that vot-

ers will not be misled into supporting or opposing the initiative because of the words employed by the Title Board. *In re 2011–2012 No. 45*, 274 P.3d at 582.

### 1. The Titles Satisfy the Clear Title Requirement

¶ 26 Petitioners contend that the titles of the Proposed Initiatives are misleading because: (1) they do not reflect the definition of "oil and gas development" set out in the initiatives' text; and (2) the title for Initiative # 93 omits the term "prohibit."

¶ 27 In their cross-petition, Proponents argue that the Title Board erred in removing the phrase "hydraulic fracturing" from the title for Initiative # 90. We disagree with the contentions by both Petitioners and Proponents, and hold that the titles set by the Title Board are not misleading and fairly reflect the purpose of the Proposed Initiatives.

i.

¶ 28 Petitioners argue that the titles for the Proposed Initiatives are misleading because they omit the definition of "oil and gas development" and thus fail to notify voters that local governments' authority to regulate is limited to oil and gas owned by the State. Section 2 of the Proposed Initiatives states: "For purposes of this article, 'oil and gas development' means exploration for and production of *Colorado's* oil, gas, other gaseous and liquid hydrocarbons, and carbon dioxide." (Emphasis added). Petitioners argue that the use of the possessive noun, "Colorado's," indicates that local governments are limited to regulating minerals owned by the state and administered by the State Land Board.

¶ 29 Proponents argue that the initiatives apply to oil, gas, other gaseous and liquid hydrocarbons, and carbon dioxide located *within Colorado's geographic boundaries*, as evidenced by section 2 of each initiative,

---

4. Petitioners make no claim here, nor did they before the Title Board, that the titles for the Proposed Initiatives fail to provide a clear understanding of the effect of a "yes/for" or "no/against" vote. *Cf. In re Proposed Ballot Initiative on Parental Rights*, 913 P.2d 1127, 1130 (Colo. 1996) (refusing to address issue raised by Petitioners that was not raised before the Title Board).

which states that "the people of the State of Colorado hereby vest the right, power, and authority in local governments to regulate oil and gas development *within their geographic borders.*" (Emphasis added). Proponents also argue that because the "not a taking" provision in section 3 applies only to privately-owned resources, Petitioners' interpretation that the Proposed Initiatives apply only to state-owned oil and gas resources makes little sense.

¶ 30 The Title Board relied on Proponents' testimony regarding the meaning of the initiatives to conclude that the term "Colorado's" referred to the state's geographic boundaries. *See In re Title, Ballot Title & Submission Clause, & Summary for Proposed Initiative on Water Rights,* 877 P.2d 321, 327 (Colo.1994) ("It is appropriate for the Board, when setting a title, to consider the testimony of Proponents concerning the intent and meaning of a proposal.").

¶ 31 We conclude that nothing in the plain language of the Proposed Initiatives limits their application to state-owned oil and gas resources. In construing the text of a proposed initiative, we employ general rules of statutory construction and accord the language of the proposed initiative and its titles its plain meaning. *In re 2011–2012 No. 3,* 274 P.3d at 565. When read as a whole, "oil and gas development" as used in the Proposed Initiatives means exploration for and production of oil, gas, other gaseous and liquid hydrocarbons, and carbon dioxide located within Colorado's geographic boundaries. We thus disagree with Petitioners' contention that the titles of the Proposed Initiatives are misleading insofar as they omit the definition of "oil and gas development." *See In re Proposed Initiated Constitutional Amendment Concerning the Fair Treatment of Injured Workers Amendment,* 873 P.2d 718, 720 (Colo.1994) (rejecting a challenge to a ballot title because "petitioners' argument is based on their interpreta-

tion of the proposed initiative, not on its express language").

### ii.

■■■ ¶ 32 Section 2 of Initiative # 90 states that the "right, power, and authority" granted to local governments includes the ability to enact *prohibitions or limits* on oil and gas development. Section 2 of Initiative # 93 refers only to local governments' ability to enact *limits* on oil and gas development. Despite this difference in wording, the Title Board initially set identical titles for Initiatives # 90 and # 93, and each included the phrase, "allowing local governments to *prohibit or limit* oil and gas development." (Emphasis added). At the April 16, 2014, rehearing, Proponents raised this issue with the Title Board, and, consistent with the language of section 2 of Initiative # 93, the Title Board amended the title for that initiative by deleting the words "prohibit or." The final title for Initiative # 93 therefore states that the initiative "increas[es] local government authority to *limit* oil and gas development." (Emphasis added).

¶ 33 Petitioners argue that the title for Initiative # 93 fails to indicate that the initiative allows local governments to enact "prohibitions" related to oil and gas development. Although the words "prohibit or" do not appear in section 2 of Initiative # 93, Petitioners contend that the phrase "enact limits" could be interpreted to include the ability to enact prohibitions on oil and gas development. Additionally, they argue that the presence of "prohibition" in section 3 of the initiative ("[a]ny law, regulation, *prohibition,* or limit enacted pursuant to this article is not a taking ...") (emphasis added) indicates that "the ability to enact limits on oil and gas development," as set out in section 2, includes the ability to prohibit oil and gas development.[5] Thus, they contend that the Title Board erred by removing the word "prohibit" from the title for Initiative # 93.

---

5. In the alternative, Petitioners argue that the Title Board lacked jurisdiction to consider whether or not "prohibit" should be included in the title for Initiative # 93 and the Title Board erred in removing "prohibit" from the title because Proponents did not file a motion for rehearing raising this issue. However, Proponents orally raised the issue before the Title Board at the rehearing. Because the Title Board addressed this issue at the rehearing and thereafter amended the title for Initiative # 93, and Petitioners raised this issue in their briefing to this court, this issue is now properly before us and we need not comment on the procedure below.

¶ 34 In our view, the Title Board appropriately deferred to Proponents' testimony at the rehearing that the omission of the word "prohibitions" in section 2 of Initiative # 93 was intentional. *See In re Title, Ballot Title & Submission Clause, & Summary for 1999–2000 No. 25*, 974 P.2d 458, 465 (Colo.1999) ("the Board must give deference to the intent of the proposal as expressed by its proponent ... without neglecting its duty to consider the public confusion that might result from misleading titles"); *In re Proposed Initiated Constitutional Amendment Concerning Unsafe Workplace Env't*, 830 P.2d 1031, 1034 (Colo.1992) (consideration of testimony from the proponent is appropriate). In amending the initial title for Initiative # 93 by striking the phrase "prohibit or," the final title now reflects the difference in language of section 2 of the initiative, and accurately distinguishes Initiative # 93 from Initiative # 90. Whether, as Petitioners contend, the phrase, "ability to enact limits," in the initiative encompasses the "ability to prohibit" is a question of interpretation, which is beyond the scope of the Title Board's duties when setting a title. *See In re Proposed Initiated Constitutional Amendment Concerning Fair Fishing*, 877 P.2d 1355, 1362 (Colo.1994) ("It is not the function of the Board to determine the meaning of the language of an initiative.... Nor is the function of the Board to disclose every possible interpretation of the language of the initiative."); *see also In re Title, Ballot Title & Submission Clause, & Summary For 1999–2000 No. 255*, 4 P.3d 485, 498 (Colo.2000) (the Title Board is generally not required to define a term that is undefined in the proposed measure). We thus hold that the title set by the Title Board for Initiative # 93 satisfies the clear title requirement because it is not misleading, and it fairly reflects the language and purpose of Initiative # 93.

### iii.

¶ 35 In their cross-petition, Proponents contend that the Title Board erred in removing the phrase "hydraulic fracturing" from the title for Initiative # 90[6] and that the title should mirror the language in section 2 of the initiative authorizing local government regulation of "oil and gas development, *including hydraulic fracturing*." (Emphasis added). According to Proponents, the revised title is misleading because it fails to advise the electorate of the central purpose of the initiative.

¶ 36 In setting a title, the Title Board is "only obligated to fairly summarize the central points of a proposed measure, and need not refer to every effect that the measure may have on the current statutory scheme." *In re Title, Ballot Title & Submission Clause, & Summary for Petition on Campaign & Political Fin.*, 877 P.2d 311, 315 (Colo.1994). The current title for Initiative # 90 includes the central feature of the initiative, which is to expand local governments' authority to regulate "oil and gas development." Although section 2 of the initiative makes clear that "oil and gas development" *includes* "hydraulic fracturing," this method is but one example of the type of "oil and gas development" that may be regulated under this initiative. The title is not misleading simply because it omits hydraulic fracturing or other methods as examples of the types of oil and gas development that can be regulated under the initiative. *See, e.g., In re 2007–2008 No. 62*, 184 P.3d at 60 ("While titles must be fair, clear, accurate and complete, the Title Board is not required to set out every detail of an initiative."); *In re Title, Ballot Title & Submission Clause, & Summary for 1997–98 No. 62*, 961 P.2d 1077, 1082 (Colo.1998) ("[W]e will not rewrite the titles or submission clause for the Board, and we will reverse the Board's action in preparing them only if they contain a material and significant omission, misstatement, or misrepresentation."); *In re Title, Ballot Title & Submission Clause, & Summary for Proposed Initiative on Educ. Tax Refund*, 823 P.2d 1353, 1355 (Colo.1991) ("The board is not required to describe every nuance and feature of the proposed measure."). The reference in the title to "oil and gas development" is sufficient to describe the scope of the initiative. We thus hold that the title set

**6.** Although the Title Board also removed the phrase "hydraulic fracturing" from the title for Initiative # 93, Proponents raise this argument only with respect to Initiative # 90.

by the Title Board for Initiative # 90 satisfies the clear title requirement because it is not misleading and it fairly reflects the central purpose of the initiative.

## IV. Conclusion

¶ 37 We hold that the Proposed Initiatives contain a single subject—the expansion of local governments' authority to enact laws regulating oil and gas development that are more restrictive than state law. We also hold that the titles set by the Title Board satisfy the clear title requirement because they fairly reflect the purpose of the initiatives and are not misleading. We therefore affirm the actions of the Title Board.

CHIEF JUSTICE RICE dissents, and JUSTICE HOBBS joins in the dissent.

APPENDIX A—Initiative # 90 and Titles

*Be it Enacted by the People of the State of Colorado:*

SECTION 1. In the constitution of the state of Colorado, add article XXX as follows:

### ARTICLE XXX

### Local Government Control of Oil and Gas Development Including Hydraulic Fracturing

**Section 1. Purposes and findings.** THE PEOPLE OF THE STATE OF COLORADO FIND AND DECLARE:

a. THAT THE CONDUCT OF OIL AND GAS DEVELOPMENT, INCLUDING THE USE OF HYDRAULIC FRACTURING, MAY IMPACT PUBLIC HEALTH, SAFETY, WELFARE, AND THE ENVIRONMENT;

b. THAT ANY IMPACTS ARE EXPERIENCED MOST DIRECTLY IN LOCAL COMMUNITIES; AND

c. THAT TO PRESERVE THE PUBLIC'S HEALTH, SAFETY, WELFARE, AND THE ENVIRONMENT, THE PEOPLE DESIRE TO EXPAND THE AUTHORITY OF LOCAL GOVERNMENTS BY VESTING IN THEM THE RIGHT TO REGULATE OIL AND GAS DEVELOPMENT.

**Section 2. Grant of authority.** THE PEOPLE OF THE STATE OF COLORADO HEREBY VEST THE RIGHT, POWER, AND AUTHORITY IN LOCAL GOVERNMENTS TO REGULATE OIL AND GAS DEVELOPMENT WITHIN THEIR GEOGRAPHIC BORDERS; THIS RIGHT, POWER, AND AUTHORITY INCLUDES THE ABILITY TO ENACT PROHIBITIONS OR LIMITS ON OIL AND GAS DEVELOPMENT, INCLUDING HYDRAULIC FRACTURING. LOCAL LAWS, REGULATIONS, ORDINANCES, OR CHARTER PROVISIONS MAY BE MORE RESTRICTIVE AND PROTECTIVE OF A COMMUNITY'S HEALTH, SAFETY, WELFARE, AND ENVIRONMENT THAN LAWS THAT MAY BE ENACTED BY THE GENERAL ASSEMBLY OR REGULATIONS ADOPTED BY EXECUTIVE AGENCIES OF THE STATE. FOR PURPOSES OF THIS ARTICLE, "OIL AND GAS DEVELOPMENT" MEANS EXPLORATION FOR AND PRODUCTION OF COLORADO'S OIL, GAS, OTHER GASEOUS AND LIQUID HYDROCARBONS, AND CARBON DIOXIDE. THE PROVISIONS OF THIS ARTICLE APPLY TO EVERY COLORADO CITY, TOWN, COUNTY, AND CITY AND COUNTY, NOTWITHSTANDING ANY PROVISION OF ARTICLE XX, OR SECTION 16 OF ARTICLE XIV, OF THE COLORADO CONSTITUTION.

**Section 3. Not a taking.** ANY LAW, REGULATION, PROHIBITION, OR LIMIT ENACTED PURSUANT TO THIS ARTICLE IS NOT A TAKING OF PRIVATE PROPERTY AND DOES NOT REQUIRE THE PAYMENT OF JUST COMPENSATION PURSUANT TO SECTIONS 14 AND 15 OF ARTICLE II OF THE COLORADO CONSTITUTION.

**Section 4. Self executing, severability, conflicting provisions.** ALL PROVISIONS OF THIS ARTICLE ARE SELF EXECUTING, ARE SEVERABLE, AND SUPERSEDE CONFLICTING STATE AND LOCAL LAWS AND REGULATIONS.

LAWS AND REGULATIONS MAY BE ENACTED TO FACILITATE THE OPERATION OF THIS ARTICLE, BUT IN NO WAY LIMITING OR RESTRICTING THE PROVISIONS OF THIS ARTICLE OR THE POWERS AND RIGHTS HEREIN GRANTED. IF ANY LOCAL LAW, REGULATION, ORDINANCE, OR CHARTER PROVISION ENACTED OR ADOPTED PURSUANT TO THIS ARTICLE CONFLICTS WITH A STATE LAW OR REGULATION, THE MORE RESTRICTIVE AND PROTECTIVE LAW OR REGULATION GOVERNS.

### Ballot Title Setting Board

### Proposed Initiative 2013–2014 # 90

The title as designated and fixed by the Board is as follows:

An amendment to the Colorado constitution concerning local government regulation of oil and gas development, and, in connection therewith, increasing local government authority to prohibit or limit oil and gas development; authorizing local laws and regulations that are more restrictive and protective of a community's health, safety, welfare, and environment than state law; declaring that if state or local laws and regulations conflict the more restrictive law or regulation governs; and specifying that such local laws and regulations are not a taking of private property requiring compensation under the Colorado constitution.

The ballot title and submission clause as designated and fixed by the Board is as follows:

Shall there be an amendment to the Colorado constitution concerning local government regulation of oil and gas development, and, in connection therewith, increasing local government authority to prohibit or limit oil and gas development; authorizing local laws and regulations that are more restrictive and protective of a community's health, safety, welfare, and environment than state law; declaring that if state or local laws and regulations conflict the more restrictive law or regulation governs; and specifying that such local laws and regulations are not a taking of private property requiring compensation under the Colorado constitution?

APPENDIX B—Initiative # 93 and Titles

*Be it Enacted by the People of the State of Colorado:*

SECTION 1. In the constitution of the state of Colorado, add article XXX as follows:

### ARTICLE XXX

### Local Government Control of Oil and Gas Development Including Hydraulic Fracturing

**Section 1. Purposes and findings.** THE PEOPLE OF THE STATE OF COLORADO FIND AND DECLARE:

a. THAT THE CONDUCT OF OIL AND GAS DEVELOPMENT, INCLUDING THE USE OF HYDRAULIC FRACTURING, MAY IMPACT PUBLIC HEALTH, SAFETY, WELFARE, AND THE ENVIRONMENT;

b. THAT ANY IMPACTS ARE EXPERIENCED MOST DIRECTLY IN LOCAL COMMUNITIES;

c. THAT THE CITIZENS OF LOCAL COMMUNITIES HAVE HISTORICALLY RELIED UPON LOCAL GOVERNMENTS TO REGULATE LOCAL LAND USES AND TO MINIMIZE POTENTIAL LAND USE CONFLICTS BETWEEN INDUSTRIAL DEVELOPMENT AND RESIDENTIAL DEVELOPMENT; AND

d. THAT TO PRESERVE THE PUBLIC'S HEALTH, SAFETY, WELFARE, AND THE ENVIRONMENT, THE PEOPLE DESIRE TO EXPAND THE AUTHORITY OF LOCAL GOVERNMENTS BY VESTING IN THEM THE RIGHT TO REGULATE OIL AND GAS DEVELOPMENT.

**Section 2. Grant of authority.** THE PEOPLE OF THE STATE OF COLORADO HEREBY VEST THE RIGHT, POWER, AND AUTHORITY IN LOCAL GOVERNMENTS TO REGULATE OIL AND GAS DEVELOPMENT WITHIN THEIR GEOGRAPHIC BORDERS; THIS RIGHT,

POWER, AND AUTHORITY INCLUDES THE ABILITY TO ENACT LIMITS ON OIL AND GAS DEVELOPMENT, INCLUDING HYDRAULIC FRACTURING. LOCAL LAWS, REGULATIONS, ORDINANCES, OR CHARTER PROVISIONS MAY BE MORE RESTRICTIVE AND PROTECTIVE OF A COMMUNITY'S HEALTH, SAFETY, WELFARE, AND ENVIRONMENT THAN LAWS THAT MAY BE ENACTED BY THE GENERAL ASSEMBLY OR REGULATIONS ADOPTED BY EXECUTIVE AGENCIES OF THE STATE. FOR PURPOSES OF THIS ARTICLE, "OIL AND GAS DEVELOPMENT" MEANS EXPLORATION FOR AND PRODUCTION OF COLORADO'S OIL, GAS, OTHER GASEOUS AND LIQUID HYDROCARBONS, AND CARBON DIOXIDE. THE PROVISIONS OF THIS ARTICLE APPLY TO EVERY COLORADO CITY, TOWN, COUNTY, AND CITY AND COUNTY, NOTWITHSTANDING ANY PROVISION OF ARTICLE XX, OR SECTION 16 OF ARTICLE XIV, OF THE COLORADO CONSTITUTION.

**Section 3. Not a taking.** ANY LAW, REGULATION, PROHIBITION, OR LIMIT ENACTED PURSUANT TO THIS ARTICLE IS NOT A TAKING OF PRIVATE PROPERTY AND DOES NOT REQUIRE THE PAYMENT OF JUST COMPENSATION PURSUANT TO SECTIONS 14 AND 15 OF ARTICLE II OF THE COLORADO CONSTITUTION.

**Section 4. Self executing, severability, conflicting provisions.** ALL PROVISIONS OF THIS ARTICLE ARE SELF EXECUTING, ARE SEVERABLE, AND SUPERSEDE CONFLICTING STATE AND LOCAL LAWS AND REGULATIONS. LAWS AND REGULATIONS MAY BE ENACTED TO FACILITATE THE OPERATION OF THIS ARTICLE, BUT IN NO WAY LIMITING OR RESTRICTING THE PROVISIONS OF THIS ARTICLE OR THE POWERS AND RIGHTS HEREIN GRANTED. IF ANY LOCAL LAW, REGULATION, ORDINANCE, OR CHARTER PROVISION ENACTED OR ADOPTED PURSUANT TO THIS ARTICLE CONFLICTS WITH A STATE LAW OR REGULATION, THE MORE RESTRICTIVE AND PROTECTIVE LAW OR REGULATION GOVERNS.

### *Ballot Title Setting Board*

#### Proposed Initiative 2013–2014 # 93

The title as designated and fixed by the Board is as follows:

An amendment to the Colorado constitution concerning local government regulation of oil and gas development, and, in connection therewith, increasing local government authority to limit oil and gas development; authorizing local laws and regulations that are more restrictive and protective of a community's health, safety, welfare, and environment than state law; declaring that if state or local laws and regulations conflict the more restrictive law or regulation governs; and specifying that such local laws and regulations are not a taking of private property requiring compensation under the Colorado constitution.

The ballot title and submission clause as designated and fixed by the Board is as follows:

Shall there be an amendment to the Colorado constitution concerning local government regulation of oil and gas development, and, in connection therewith, increasing local government authority to limit oil and gas development; authorizing local laws and regulations that are more restrictive and protective of a community's health, safety, welfare, and environment than state law; declaring that if state or local laws and regulations conflict the more restrictive law or regulation governs; and specifying that such local laws and regulations are not a taking of private property requiring compensation under the Colorado constitution?

CHIEF JUSTICE RICE dissenting.

¶ 38 The Proposed Initiatives violate the single subject rule contained in article V, section 1(5.5) of the Colorado Constitution and section 1–40–106.5(1)(e), C.R.S. (2013), by (1) vesting local governments with expansive authority to regulate oil and gas devel-

opment, and (2) partially divesting property owners of the right to just compensation for the taking of private property. The purposes of these two distinct subjects are not dependent upon or connected with each other. As such, the Proposed Initiatives violate the single subject rule.

¶ 39 The Proposed Initiatives could surprise voters who own property near oil and gas deposits, and support the local government's ability to regulate oil and gas development, by including a surreptitious provision that could curtail the voters' constitutional rights to just compensation for a taking of their property. Moreover, even the Proponents—by submitting two other versions of the Proposed Initiatives that authorize local government regulation of oil and gas development without implicating takings law—appear to have recognized the incongruous and inessential nature of the takings limitation to local regulation. *See* Proposed Initiatives 2013–2014 # 91 and # 92.

¶ 40 In addition to violating the single subject rule, the titles set by the Title Board could unfairly mislead voters by failing to provide a clear understanding of the effect of a "yes/for" or "no/against" vote on the Proposed Initiatives. The titles also describe the takings subject in a way that omits the implication in the text that the Proposed Initiatives might exempt local regulations governing oil and gas development from federal takings law. This inconsistency between the titles and the text highlights the unfairly misleading nature of the titles.

¶ 41 Because the Proposed Initiatives and their titles violate the single subject requirement and could unfairly mislead voters, I respectfully dissent from the majority's decision to affirm the Title Board.

## I.  Facts and Proceedings Below

¶ 42 The Office of Legislative Council and Office of Legislative Services held a public review and comment meeting with the Proponents about the Proposed Initiatives on March 14, 2014. After this meeting, the Proponents filed the Proposed Initiatives

with the Secretary of State. The Secretary of State's office placed the Proposed Initiatives on the agenda for a public hearing before the Title Board on April 3, 2014.

¶ 43 During the hearing, the Title Board found that the Proposed Initiatives contained a single subject. It then set titles for the Proposed Initiatives. The title for Proposed Initiative # 90 reads as follows:

> An amendment to the Colorado constitution concerning local government regulation of oil and gas development, and, in connection therewith, increasing local government authority to prohibit or limit oil and gas development; authorizing local laws and regulations that are more restrictive and protective of a community's health, safety, welfare, and the environment than state law; declaring that if state or local laws and regulations conflict the more restrictive law or regulation governs; and specifying that such local laws and regulations are *not a taking* of private property requiring compensation under the Colorado constitution.

(Emphasis added.)

¶ 44 The title for Proposed Initiative # 93 is identical to the title for Proposed Initiative # 90, save for the absence of the phrase "to prohibit" from the clause defining the scope of the local government's regulatory authority.[7] Opponents of the Proposed Initiatives filed motions for rehearing with the Title Board on the grounds that the titles contained multiple subjects. The Title Board modified the titles slightly—and inconsequentially for the purposes of this analysis—and denied the motions for rehearing. The Opponents petitioned this Court for its original review of the Title Board's actions pursuant to section 1–40–107(2), C.R.S. (2013).

## II.  Standard of Review

¶ 45 Our limited role in the title setting process prohibits us from addressing the merits of a proposed initiative and from suggesting how an initiative might be applied if enacted. *In re Title, Ballot Title and Submission Clause for Proposed Initiative 2001–*

---

7.  Initiative # 93 states in relevant part that it increases "local government authority *to limit* oil

and gas development," rather than to "prohibit or limit" such development.

*2002 No. 43*, 46 P.3d 438, 443 (Colo.2002) [hereinafter *In re Proposed Initiative 2001–2002 No. 43*]. This Court also "employ[s] all legitimate presumptions in favor of the propriety of the [Title] Board's actions." *In re Title, Ballot Title, and Submission Clause for 2009–2010 No. 45*, 234 P.3d 642, 645 (Colo.2010) [hereinafter *In re Proposed Initiative 2009–2010 No. 45*]. The Court will examine Proposed Initiatives thoroughly enough, however, to determine whether they violate the constitutional prohibition against initiative proposals containing multiple subjects. *In re Title, Ballot Title, Submission Clause for 2011–2012 No. 3*, 2012 CO 25, ¶ 8, 274 P.3d 562 [hereinafter *In re Proposed Initiative 2011–2012 No. 3*].

¶ 46 We also analyze the plain language of the titles to determine whether the titles are fair, clear, accurate, and complete. *See In re Proposed Initiative 2009–2010 No. 45*, 234 P.3d at 649. The titles must "unambiguously state the principle of the provision sought to be added, amended, or repealed." § 1–40–106(3)(b), C.R.S. (2013). The Court will reverse the Title Board's designation if the titles are "insufficient, unfair, or misleading." *In re Proposed Initiative 2009–2010 No. 45*, 234 P.3d at 648.

### III. Analysis

¶ 47 I would hold that the Proposed Initiatives violate the single subject rule contained in article V, section 1(5.5) of the Colorado Constitution and section 1–40–106.5. I would also hold that the Title Board crafted the titles in a manner that unfairly misleads voters by failing to provide a clear understanding of the effect of a "yes/for" or "no/against" vote on the Proposed Initiatives and by omitting the implication in Section 3 of the text that the Proposed Initiatives might exempt local regulations governing oil and gas development from federal takings law. I first turn to why, in my view, the Proposed Initiatives violate the single subject requirement.

### A. The Proposed Initiatives Violate the Single Subject Requirement

¶ 48 Colorado law requires "that every constitutional amendment or law proposed by initiative ... be limited to a single subject, which shall be clearly expressed in its title." § 1–40–106.5(1)(a); *see also* Colo. Const. art. V, § 1(5.5) (prohibiting ballot measures from containing more than one subject and requiring the title of a measure to clearly express the single subject). To determine if a proposed initiative violates this rule, we apply the test originally stated in *People ex rel. Elder v. Sours*, 31 Colo. 369, 403, 74 P. 167, 177 (1903): The text of the measure "must relate to more than one subject, and have at least two distinct and separate purposes not dependent upon or connected with each other." *See In re Proposed Initiative 2011–2012 No. 3*, ¶ 9 (citing *Sours* test); *see also In re Proposed Initiative 2001–2002 No. 43*, 46 P.3d at 441. As such, the subject matter of an initiative must be "necessarily and properly connected," rather than "disconnected or incongruous." *In re Proposed Initiative "Public Rights in Waters II"*, 898 P.2d 1076, 1079 (Colo.1995) [hereinafter *Public Rights in Waters II*]. A proponent's attempt to characterize a proposed initiative under "some overarching theme" will not save the measure if it contains separate and unconnected purposes. *In re Proposed Initiative 2001–2002 No. 43*, 46 P.3d at 442.

¶ 49 We have previously explained the importance of the single subject rule in preventing the negative effects associated with omnibus initiatives. *See id.* at 442–43. For example, the single subject rule helps avoid "voter surprise and fraud occasioned by the inadvertent passage of a surreptitious provision 'coiled up in the folds' of the complex initiative." *Id.* at 442; *see* § 1–40–106.5(1)(e)(II).

¶ 50 In this instance, the Proposed Initiatives relate to two subjects that have "two distinct and separate purposes which are not dependent upon or connected [to] each other." *See In re Proposed Initiative 2011–2012 No. 3*, ¶ 9. The first subject vests local governments with expansive authority to regulate oil and gas development. The stated purpose of this subject is to "preserve the public's health, safety, welfare, and the environment."

¶ 51 The second subject is a limitation on what constitutes a taking that merits just compensation. The "not a taking" clause in

Section 3 of the Proposed Initiatives provides that:

> Any law, regulation, prohibition, or limit enacted pursuant to this article is not a taking of private property and does not require the payment of just compensation pursuant to sections 14 and 15 of Article II of the Colorado Constitution.

¶ 52 The Proposed Initiatives do not articulate how limiting the scope of what constitutes a taking serves the purpose of preserving the public's health, safety, welfare, or the environment. Such preservation certainly does not depend upon categorically exempting local oil and gas regulations from takings law, nor is the takings exemption even connected to this purpose. To the contrary, the public's welfare could actually suffer due to the Proposed Initiatives' elimination of an opportunity for just compensation. Although we cannot speculate as to the intended purpose of the takings limitation, the "not a taking" clause does not serve the stated purpose of preserving the public's health, safety, welfare, or the environment. The purposes of the Proposed Initiatives are therefore "disconnected [and] incongruous" and demonstrate that the Proposed Initiatives "relate[ ] to more than one subject." *See In re Proposed Initiative 2011–2012 No. 3,* ¶ 9.

¶ 53 Although the "not a taking" clause in Section 3 of the Proposed Initiatives specifically exempts local oil and gas regulations from takings protections, the clause's tie to the overarching "local regulation of oil and gas development" theme does not prevent the Proposed Initiatives from violating the single subject rule. *See id.* at ¶ 10. This Court has held that "water" and "revenue changes" are two examples of "overarching themes" that did not qualify as single subjects when the proposed initiatives associated with those themes contained disconnected or incongruous provisions. *See Public Rights in Waters II,* 898 P.2d at 1080 (holding that the theme of "water" did not satisfy the single subject rule when the measure contained two separate subjects—water conservation district elections and the public trust doctrine); *In re Proposed Initiative Amend TABOR 25,* 900 P.2d 121, 125 (Colo.1995) (holding that the umbrella subject of "reve-nue changes" did not alter the fact that the measure contained two unrelated subjects—a tax credit and changes to the procedural requirements for ballot titles). In much the same way that "water" and "revenue changes" constitute "overarching themes" that fail to satisfy the single subject rule, the overarching theme of "local regulation of oil and gas development" does not qualify as a single subject because the Proposed Initiatives contain disconnected and incongruous provisions that vest local governments with authority to regulate oil and gas development on the one hand and limit takings law on the other.

¶ 54 Moreover, the fact that the plain language of the Proposed Initiatives does not articulate a clear purpose for the "not a taking" clause could lead to "voter surprise … occasioned by the inadvertent passage of a surreptitious provision 'coiled up in the folds' of a complex initiative." *In re Proposed Initiative 2001–2002 No. 43,* 46 P.3d at 442; *see also* § 1–40–106.5(1)(e)(II). While voters who own property near oil and gas deposits might support the Proposed Initiatives' attempt to expand local regulatory power over oil and gas development, those same voters might be surprised to learn that voting for the local regulation measure could also curtail their own constitutional rights to just compensation for a taking of their property. Holding that the Proposed Initiatives violate the single subject requirement would avoid this improper surprise.

### B. The Titles Are Unfairly Misleading

¶ 55 In my view, the titles unfairly mislead voters because they fail to provide a clear understanding of the effect of a "yes/for" or "no/against" vote on the Proposed Initiatives, and they describe the takings subject in a way that omits the implication in Section 3 of the text that the Proposed Initiatives might exempt local oil and gas regulations from federal takings law.

¶ 56 To start, a "yes" vote on any of the Proposed Initiatives would support the negative statement that any regulation on oil and gas development passed by a local government is "not a taking of private property requiring compensation under the Colorado

constitution." The same "yes" vote would also express the voter's affirmative desire to vest local governments with expansive authority to regulate oil and gas development. The semantic confusion that arises when a "yes" vote would both negatively impact the scope of takings law and affirmatively vest local governments with expansive regulatory authority demonstrates that the "general understanding of the effect of a 'yes/for' or 'no/against' vote will be unclear" to voters, *see* section 1–40–106(3)(b), because "yes" would mean "no" in one respect (no on takings) and "yes" in another (yes on local authority to regulate).

¶ 57 Furthermore, the titles could unfairly mislead voters because they omit the implication in Section 3 of the text that the Proposed Initiatives could exempt local oil and gas regulations from federal takings protections. The titles state that any local regulation of oil and gas development is "not a taking of private property requiring compensation under the Colorado constitution." A voter would likely interpret the plain language of this clause to only narrow the scope of Colorado takings law without venturing into the federal takings arena. Section 3 of the Proposed Initiatives' text, however, states that "[a]ny law, regulation, prohibition, or limit enacted pursuant to this article is *not a taking of private property and* does not require the payment of just compensation pursuant to sections 14 and 15 of Article II of the Colorado constitution." (Emphasis added.) Unlike the Colorado-specific titles, Section 3 of the Proposed Initiatives' text separates the "not a taking" language from the Colorado-specific portion of the provision with the word "and." This use of "and" could lead voters to believe that a local oil and gas regulation passed pursuant to the Proposed Initiatives can *never* constitute a taking under state *or* federal law because the "not a taking" portion of Section 3 does not indicate whether the word "taking" applies to state takings, to federal takings, or to both.

¶ 58 The inconsistency between the titles and the text of Section 3 could unfairly mislead voters to adopt a provision that might fail under the United States Constitution. The most expansive reading of the ambiguous term "taking" in Section 3 of the text would violate the Supremacy Clause by allowing state law to trump federal takings protections. *See* U.S. Const. art. VI, cl. 2 (Supremacy Clause); *Middleton v. Hartman*, 45 P.3d 721, 731 (Colo.2002) ("[T]he Supremacy Clause mandates that state law give way when it conflicts with federal law."). The Supremacy Clause implications of Section 3 might surprise a voter who only reads the narrow, Colorado-specific, takings limitation stated in the titles. Neither a proposed initiative nor its titles should unfairly mislead voters into adopting an ambiguous provision that could violate the United States Constitution, particularly when, as here, the titles fail to put voters on notice about the textual ambiguity.

¶ 59 I would reverse the Title Board's actions because the titles unfairly mislead voters by (1) failing to provide a clear understanding of the effect of a "yes/for" or "no/against" vote on the Proposed Initiatives, and (2) by failing to acknowledge the implication in Section 3 that the Proposed Initiatives might exempt local regulations governing oil and gas development from federal takings law in a way that would violate the Supremacy Clause.

## IV. Conclusion

¶ 60 The Proposed Initiatives and their titles violate the single subject rule and could unfairly mislead voters. I would therefore reverse the Title Board's determination that the Proposed Initiatives contain a single subject and would remand the Proposed Initiatives to the Title Board with instructions to return the Proposed Initiatives to the Proponents. I therefore respectfully dissent from the majority's decision affirming the Title Board.

I am authorized to state that JUSTICE HOBBS joins in this dissent.