Colorado Supreme Court Opinions || April 25, 2016

Colorado Supreme Court -- April 25, 2016
2016 CO 24. No. 16SA48. In the Matter of the Title, Ballot Title and Submission Clause for 2015â16 #73: Hayes v. Spalding.

 The Supreme Court of the State of Colorado
 2 East 14th Avenue • Denver, Colorado 80203 

 2016 CO 24 

 Supreme Court Case No. 16SA48 
 Original Proceeding Pursuant to § 1-40-107(2), C.R.S. (2015) 
 Appeal from the Ballot Title Setting Board

 In the Matter of the Title, Ballot Title and Submission Clause for 2015–2016 #73 
 Petitioner: 
 Phillip Hayes, 
 v.
 Respondents: 
 Mike Spalding and David Ottke,
 and
 Title Board: 
 Suzanne Staiert, Frederick Yarger, and Jason Gelender.

 Title Board Action Reversed 
 en banc 
 April 25, 2016

 Attorneys for Petitioner: 
  

 Recht Kornfeld, P.C.
 Mark G. Grueskin
 Denver, Colorado 
 
 Mike Spalding, Pro Se 
 Littleton, Colorado 
  
 David Ottke, Pro Se 
 Aurora, Colorado 
  
  
  
 JUSTICE GABRIEL delivered the Opinion of the Court.

  

 ¶1       In this opinion, we review the actions of the Title Board in setting the title and the ballot title and submission clause for Initiative 2015–2016 #73 (“Initiative #73”).[1]

 ¶2       We conclude that Initiative #73 contains one subject, namely, the manner in which recall elections are triggered and conducted.  We further conclude, however, that the title set by the Title Board does not satisfy the clear title requirement because it does not alert voters to central elements of the initiative; it is misleading as to other elements; and, as all parties agree, it unnecessarily recites existing law.

 ¶3       Accordingly, we reverse the action of the Title Board in setting the title for Initiative #73, and we return this measure to the Board for the purpose of fixing a new title that satisfies the clear title requirement.

 I.  Facts and Procedural History 

 ¶4       Mike Spalding and David Ottke (collectively, the “proponents”) proposed Initiative #73, which would amend article XXI of the Colorado Constitution to change the procedures leading to and the conduct of recall elections for state and local elective officials.  A review and comment hearing was held before representatives of the Offices of Legislative Counsel and Legislative Legal Services.  Thereafter, the proponents submitted a final version of their proposed initiative to the Secretary of State for purposes of submission to the Title Board.

 ¶5       The Title Board conducted a hearing, concluded that the proposed initiative contained a single subject, and set a title.  Thereafter, the petitioner, Phillip Hayes, filed
 a motion for rehearing, contending that the title comprised multiple subjects and was misleading, confusing, and inaccurate.

 ¶6       The Title Board subsequently granted the motion for rehearing in part and set the following title: 

 
 An amendment to the Colorado constitution concerning recall of elective officials, and, in connection therewith, specifying recall and successor election procedures for state and local elective officials; stating that recalled officials shall not be any official for six years; restricting recall from the same office for an official who has already defeated a recall effort; requiring opposition donations and spending to continue to be public records; and prohibiting identification, reporting, or limitation of donations to recall campaigns and payments to recall petition circulators.
 
 ¶7       Hayes now petitions this court for review pursuant to section 1-40-107(2), C.R.S. (2015).

 II.  Standard of Review 

 ¶8       “The Title Board is vested with considerable discretion in setting the title and the ballot title and submission clause,” and we will reverse the Board’s decision only when a title is insufficient, unfair, or misleading.  In re Title, Ballot Title & Submission Clause for 2013–2014 #90, 2014 CO 63, ¶ 8, 328 P.3d 155, 159.

 ¶9       In reviewing Title Board title settings, “we employ all legitimate presumptions in favor of the propriety of the Board’s actions.”  In re Title, Ballot Title & Submission Clause for 2009–2010 #45, 234 P.3d 642, 645 (Colo. 2010).

 ¶10       In addition, in our limited review of the Title Board’s actions, we do not address the merits of the proposed initiative.  Id. at ¶ 9, 328 P.3d at 159.  Nor do we suggest how it might be applied if enacted.  Id.  Rather, we examine the initiative’s wording to determine whether it and its title comport with the constitutional single subject and clear title requirements.  Id.  In conducting this limited inquiry, we employ the general rules of statutory construction and give words and phrases their plain and ordinary meanings.  Id.

 III.  Analysis 

 ¶11       Hayes contends that the Title Board lacked authority to set the title at issue because Initiative #73 violates the single subject requirement.  He further contends that the title violated the clear title requirement in multiple ways.  We address these arguments in turn.

 A.  Single Subject Requirement 

 
 ¶12       Article V, section 1(5.5) of the Colorado Constitution provides, in pertinent part:
 
 No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed.  If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.

 See also § 1-40-106.5(1)(a), C.R.S. (2015) (“Section 1(5.5) of article V . . . require[s] that every constitutional amendment or law proposed by initiative . . . be limited to a single subject, which shall be clearly expressed in its title.”).

 
 ¶13       The single subject requirement serves two functions.  First, it is intended
 
 [t]o forbid the treatment of incongruous subjects in the same measure, especially the practice of putting together in one measure subjects having no necessary or proper connection, for the purpose of enlisting in support of the measure the advocates of each measure, and thus securing the enactment of measures that could not be carried upon their merits[.]
  

 § 1-40-106.5(1)(e)(I).

  

 ¶14       Thus, an initiative’s subject matter must be necessarily and properly connected rather than disconnected or incongruous, and the initiative will be held to violate the single subject requirement when it relates to more than one subject and has at least two distinct and separate purposes.  In re 2013–2014 #90, ¶ 11, 328 P.3d at 159.

 ¶15       In this way, the single subject requirement “prevents the proponents from combining multiple subjects to attract a ‘yes’ vote from voters who might vote ‘no’ on one or more of the subjects if they were proposed separately.”  In re Title, Ballot Title & Submission Clause for 2013–2014 #76, 2014 CO 52, ¶ 8, 333 P.3d 76, 79.

 ¶16       Second, the single subject requirement seeks “[t]o prevent surreptitious measures and apprise the people of the subject of each measure by the title, that is, to prevent surprise and fraud from being practiced upon voters.”  § 1-40-106.5(1)(e)(II).

 ¶17       Conversely, when an initiative tends to effectuate one general objective or purpose, the initiative presents only one subject, and provisions necessary to effectuate the initiative’s purpose are properly included within its text.  In re 2013–2014 #90, ¶ 11, 328 P.3d at 160.  The breadth of the objective, however, is not without limits.  Thus, “[a] proponent’s attempt to characterize an initiative under some general theme will not save the initiative from violating the single-subject rule if the initiative contains multiple subjects.”  In re Title, Ballot Title & Submission Clause for 2009–2010 #91, 235 P.3d 1071, 1076 (Colo. 2010).

 ¶18       In light of the deference that we afford the Title Board in setting the title, we will overturn the Board’s finding that an initiative contains a single subject only in a clear case.  In re 2013–2014 #90, ¶ 7, 328 P.3d at 158.

 ¶19       Here, Hayes argues that Initiative #73 violates the single subject requirement because it purportedly contains five separate subjects: (1) triggering and conducting a recall election, (2) eliminating the single subject requirement of recall petitions, (3) allowing four different types of officials to be recalled by the same petition, (4) changing qualifications to hold office for state and county officials, and (5) changing the constitutional authority of Denver and Broomfield to determine the qualifications of their officers.  We are not persuaded.

 ¶20       In In re Title, Ballot Title & Submission Clause for 2013–2014 #76, ¶¶ 17–25, 333 P.3d at 81–83, we rejected the same or substantially similar contentions in a case also involving an initiative concerning recall elections.  Specifically, we concluded that the same and similar changes to the manner in which recall elections are triggered and conducted constituted a single subject.  Id. at ¶ 25, 333 P.3d at 83.  The same reasoning applies here.

 ¶21       Accordingly, we conclude that Initiative #73 satisfies the single subject requirement.

 B.  Clear Title Requirement 

 ¶22       The Colorado Constitution also mandates that an initiative’s single subject shall be clearly expressed in its title.  Colo. Const. art. V, § 1(5.5); In re 2013–2014 #90, ¶ 23, 328 P.3d at 162.  The title and submission clause should allow voters, whether or not they are familiar with the subject matter of a particular proposal, to determine intelligently whether to support or oppose the proposal.  In re 2013–2014 #90, ¶ 23, 328 P.3d at 162.  Thus, “[i]n setting a title, the title board shall consider the public confusion that might be caused by misleading titles and shall, whenever practicable, avoid titles for which the general understanding of the effect of a ‘yes/for’ or ‘no/against’ vote will be unclear.” § 1-40-106(3)(b), C.R.S. (2015).  In addition, the title must “correctly and fairly express the true intent and meaning” of the initiative.  Id.

 ¶23       The Title Board is afforded discretion in resolving problems of length, complexity, and clarity in designating a title and ballot title and submission clause.  In re 2013–2014 #90,, ¶24, 328 P.3d at 162.  The Board’s duty is to summarize the central features of a proposed initiative.  Id.  The Board, however, need not explain the meaning or potential effects of the proposed initiative on the current statutory scheme.  Id.

 ¶24       In determining whether a title is clear, we do not consider whether the Title Board set the best possible title.  Id. at ¶ 25, 328 P.3d at 162.  Instead, our role is to ensure that the title fairly reflects the proposed initiative such that voters will not be misled into supporting or opposing the initiative because of the words employed by the Title Board.  Id.

 ¶25       Hayes contends that the title fails to satisfy the clear title requirement  because it does not alert voters to the following allegedly “central elements” of Initiative #73:

 
 1. the number of signatures required to trigger recall elections, see Initiative #73, § 2(5) (“The required number of valid petition entries shall be 5% of active registered electors in the petition area and shall not exceed 100,000.”);
 2. the number of officials subject to recall due to a single petition, See Id. at § 2(2) (“Up to four officials in one petition area may be listed on one recall petition, but shall be voted on separately.”);
 3. the calculation for signatures on successor candidate petitions, See Id. at § 2(8) (“The required number of valid successor petition entries shall be 0.25% of active registered electors in the petition area and shall not exceed 5,000.”);
 4. restrictions on petition review to ensure the recall should take place, See Id. at § 2(5) (“[Petition e]ntries shall be reviewed individually, with no random or statistical sampling or machine reading.  Varied entries with a signature, readable first and last name, street address, and attached affidavit with or without errors shall be presumed valid until a foe disproves validity by clear and convincing evidence in a court review.”); and
 5. officials who have resigned from office during a recall process are prohibited from holding any elective office for six years, See Id. at § 2(9) (“Recalled officials and those who resign during a recall process shall not be any official for six years.”).

 ¶26       Hayes further contends that the title unnecessarily describes existing campaign finance law, while omitting the foregoing “key aspects” of Initiative #73.

 ¶27       For three reasons, we agree with Hayes’s contentions.

 ¶28       First, although the title generally states that Initiative #73 concerns the “recall of elective officials, and, in connection therewith, specifying recall and successor election procedures for state and local elective officials,” it does not advise voters what those procedures are.  Nor does it alert voters to the fact that some of the proposed changes would significantly alter how recall elections are currently conducted.

 ¶29       By way of example, the title does not advise voters that the number of signatures required to trigger a recall election would drop from 25% of the vote cast at the last preceding election for all candidates for the position at issue, Colo. Const. art. XXI, § 1, to only “5% of active registered electors in the recall area,” not to exceed 100,000, Initiative #73, § 2(5).  As Hayes observes, if this provision were in effect today, then it would reduce the number of valid signatures needed to initiate a recall of a statewide official like the governor from over 500,000 to 100,000.  Moreover, given that four statewide officials could be placed on one recall petition, petitioners could effectively reduce the number of required signatures further, to 25,000, by seeking to place four officials on a recall ballot and obtaining 25,000 signatures for each official.

 ¶30       Similarly, under the proposed initiative, “[t]he required number of valid successor petition entries shall be 0.25% of active registered electors in the petition area and shall not exceed 5,000.”  Id. at § 2(8).  Again using the example of a current petition to recall a statewide official like the governor, if this provision were in effect today, then it would result in a reduction of the required number of signatures from 10,500 total eligible electors (i.e., 1,500 from each congressional district), see § 1-4-801(2)(c)(II), C.R.S. (2015), to 5,000, thereby making it significantly easier to become a successor candidate in a statewide recall election.

 ¶31       Finally, as noted above, the proposed initiative limits the petition review that election officials perform to ensure that the recall election should go forward, and it also prohibits officials who resign from office during a recall process from holding any elective office for six years.  See Initiative #73, §§ 2(5), 2(9).  Both of these proposed changes materially alter current law and might well be of significance to voters.

 ¶32       In our view, generally stating in a title that the initiative specifies recall and successor election procedures without in any way describing those procedures does not provide sufficient information to allow voters to determine intelligently whether to support or oppose the proposal.  See In re 2013–2014 #90, ¶ 23, 328 P.3d at 162.  This is particularly true when, as here, the initiative proposes to alter existing procedures significantly.  So general a title does not allow a voter to understand the effect of a “yes/for” or “no/against” vote and thus does not satisfy the clear title requirement.  See § 1-40-106(3)(b).

 ¶33       In this regard, In re Title, Ballot Title, Submission Clause & Summary by the Title Board Pertaining to a Proposed Initiative on “Obscenity”, 877 P.2d 848, 850–51 (Colo. 1994), is instructive.  That case involved an initiative that would have permitted state and local entities to control the promotion of obscenity to the full extent permitted by the First Amendment.  Id. at 850.  The title and submission clause tracked the initiative “virtually word for word,” but we nonetheless concluded that the title and submission clause were misleading because they failed to apprise the electorate that in permitting state and local entities to control the promotion of obscenity to the full extent allowed by the First Amendment, the initiative was intended to foreclose Colorado courts from permitting any broader protection of obscenity under the Colorado Constitution.  Id. at 850–51.  Accordingly, we concluded that the title and submission clause did not contain sufficient information to enable voters to determine intelligently whether to support or oppose such a proposal.  Id. at 850.

 ¶34       Here, too, the title is not inconsistent with the initiative, but it is so general that it does not contain sufficient information to enable voters to determine intelligently whether to support or oppose the initiative.  See also In re Title, Ballot Title & Submission Clause for Proposed Initiatives 2001–2002 #21 & #22, 44 P.3d 213, 222 (Colo. 2002) (“The titles, standing alone, should be capable of being read and understood, and capable of informing the voter of the major import of the proposal, but need not include every detail.  They must allow the voter to understand the effect of a yes or no vote on the measure.  When they do not, both the title board and this court fail in our respective functions.”).

 ¶35       The second reason we agree with Hayes’s contention that the title at issue fails to satisfy the clear title requirement relates to the statement in the title that “recalled officials shall not be any official for six years.”  Although this statement is true, the initiative further provides that officials who resign during a recall process likewise shall not be any official for six years.  See Initiative #73, § 2(9).  Because the title refers to only one category of people who would be barred from holding office for a period of time (i.e., recalled officials) but omits another category (i.e., those who resign during a recall process), we conclude that the title is misleading.  See In re Title, Ballot Title & Submission Clause & Summary for 1999–2000 #104, 987 P.2d 249, 259 (Colo. 1999) (concluding that a ballot title concerning a proposed initiative regarding the manner in which judges were qualified, appointed, and retained was unclear because the text of the initiative provided that the initiative applied to all active county, district, court of appeals, and supreme court judges and justices, but the title exempted water, probate, and juvenile court judges); In re Title, Ballot Title & Submission Clause & Summary Adopted May 16, 1990, 797 P.2d 1283, 1289–90 (Colo. 1990) (concluding that the ballot summary was misleading because it stated that “food shall not be included in the tax base without approval by the registered electors,” but, in fact, food purchased for immediate consumption would continue to be included in the state tax base and, in many local jurisdictions, food purchased for domestic consumption would also be included in the tax base).

 ¶36       Finally, both Hayes and the proponents agree that the phrase “requiring opposition donations and spending to continue to be public records” in the title at issue unnecessarily states existing law and should be deleted.  In the context of this case, in which such a phrase was included in the title but essential elements of the initiative were omitted, we agree with the parties that the unnecessary phrase should be deleted.  See In re Title, Ballot Title & Submission Clause & Summary for 1999–2000 #246(e), 8 P.3d 1194, 1197 (Colo. 2000) (“The Title Board is not required to present a side-by-side proposal of the existing law and how the proposed initiative would change it.  It need not touch on every aspect of a proposal.  Instead, its task is to present straightforward, succinct, and nonargumentative titles and summaries.”); In re Proposed Initiative Amendment to Article XXIV of Constitution, 187 P.2d 930, 931 (Colo. 1947) (concluding that the title setting board had erred in not including in the title language to which the parties stipulated, ordering that the stipulation be filed, and approving the title as amended by the stipulation); see also § 1-40-106(3)(b) (requiring ballot titles to be “brief”).

 ¶37       Accordingly, we conclude that the title as set by the Title Board does not satisfy the clear title requirement.

 IV.  Conclusion 

 ¶38       For these reasons, the Title Board’s action is reversed, and we return Initiative #73 to the Board for the purpose of fixing a new title that satisfies the clear title requirement. 

  

  

 [1] The text, title, and ballot title and submission clause for Initiative #73 are attached as an appendix to this opinion.

  

 APPENDIX – Initiative #76 and Titles 
 
 Be it Enacted by the People of the State of Colorado: 
 
 Article XXI of the Colorado Constitution shall be repealed and re-enacted as follows: 
 
 Article XXI PUBLIC ACCOUNTABILITY OF OFFICIALS.
 
 Section 1. Accountability.  All state and local legislative and executive elective officials shall also be accountable to voters in the manner stated in this article.
 
 Section 2. Recall. (1) Any two electors in the petition area may file at any time signed requests to start the recall of eligible elective officials.  Legislative, council, and other local election districts shall be the petition area of their officials.  Statewide recalls shall be conducted by the Secretary of State and local recalls by any county election office in the petition area.
 
 (2) Election offices shall deliver a sample recall petition section within two days. Each black ink section shall contain 100 entry lines, 20 per 8 1/2” by 14” page in portrait layout; an affidavit form usable in 2006 for state initiatives; and the question, “Shall (names of officials) be removed as (titles)?”  Up to four officials in one petition area may be listed on one recall petition, but shall be voted on separately.
 
 (3) No petition permit, license, badge, bond, registration, training, tax, or fee shall be required of petition filers, signers, entities, or circulators.  Using paid circulators shall create no extra legal duty.  Any adult citizen may circulate any petition.  No one shall knowingly sign a petition more than once or if ineligible.  No government agent shall detain, stop, cite, or arrest circulators or signers for, while, or related to peaceably petitioning, but petition-based perjury, forgery, and other felony frauds shall be prosecuted.
 
 (4) Statewide petition entries shall be first filed within 365 days of sample section delivery, and local entries within 90 days.  One 30-day extension to file more entries made at any time shall start when a first report of invalidity is issued.  Added entries shall be reviewed similarly.  
 
 (5) The required number of valid petition entries shall be 5%of active registered electors in the petition area and shall not exceed 100,000.  Signers shall be registered electors in the petition area.  Entry lines shall require only signature, printed name, residential address, and city or town.  No error, use, or lack of minor details like middle name, common nickname, initials, street type or direction, apartment, date, or postal code shall void entries.  No sample section or affidavit error shall void entries.  Entries shall be reviewed individually, with no random or statistical sampling or machine reading.  Varied entries with a signature, readable first and last name, street address, and attached affidavit with or without errors shall be presumed valid until a foe disproves validity by clear and convincing evidence in a court review.
 
 (6) Within 10 days of filings, the election office shall count, review, itemize, and report entries for validity.  Within five days of the report, petition filers and foes may each protest without fee to the Supreme Court for its new review of disputed entries.  A report of that validity review shall issue within 20 days of protest filing.  Only petition filers prevailing in a protest shall receive attorney fees and costs.
 
 (7) Local recall elections shall occur on a Tuesday within 60 days after final validation, and statewide elections on the first November election date at least 60 days after. Ballots shall repeat the question on each official, list “Yes” and “No” choices, and list one website each from the official and petition filers.  Death or immediate resignation shall stop recalls but not pending successor petitions or elections.
 
 (8) Ballots shall then list eligible successors and one website from each.  The official shall be ineligible.  The required number of valid successor petition entries shall be 0.25% of active registered electors in the petition area and shall not exceed 5,000. Successor entries shall be first filed by 90 days before the election.  Successor entry validation and extension time shall be 20% of that time for recall entries.  Otherwise, relevant recall petition procedures shall apply to successor nomination petitions.  Recall and successor ballots shall not list political party registration.
 
 (9) Recalled officials shall lose their offices instantly.  Runoff elections shall be prohibited.  Successors shall be ineligible for recall for two years.  Recalled officials and those who resign during a recall process shall not be any official for six years.  Officials defeating a recall election are ineligible for recall from that office for four years.
 
 (10) A recall occurs on its last election date.  Election dates shall include the first Tuesday in November of odd-numbered years.  Except to provide public records, no one shall directly or indirectly give or receive government funds, labor, or other aid in any recall or successor campaign or to repay its costs.  To reduce retaliation and coercion, donations and spending for a petition campaign and circulator payments shall never be identified, reported, or limited.  Opposition donations and spending and all petitions shall be public records.  Added recall requirements and any local recall laws shall be prohibited.
 
 Section 3. Enforcement.  “Elective” means in an office subject to election, even if term limited.  This article shall also apply in all home rule governments as a matter of statewide concern.  To enforce this article unrelated to specific petition entry validity, any adult citizen may file a case in any district court, which shall decide it within 30 days.  Appeals shall be filed within five days to the Supreme Court and decided within 25 days of appeal filing.  Only successful plaintiffs enforcing this article shall be awarded their costs, attorney fees, and damages, and only against governments and officials.  This article shall be self-executing, severable, and effective upon passage.  It shall be interpreted strictly in· favor of this fundamental right to vote and against governments and officials.  It shall supersede any conflicting state or local constitutional, statutory, charter, ordinance, or other law, prior opinion, rule, regulation, or wording. 
 Ballot Title Setting Board 
 
 Proposed Initiative 2015–2016 #73 
 
 The title as designated and fixed by the Board is as follows:
 
 An amendment to the Colorado constitution concerning recall of elective officials, and, in connection therewith, specifying recall and successor election procedures for state and local elective officials; stating that recalled officials shall not be any official for six years; restricting recall from the same office for an official who has already defeated a recall effort; requiring opposition donations and spending to continue to be public records; and prohibiting identification, reporting, or limitation of donations to recall campaigns and payments to recall petition circulators.
 
 The ballot title and submission clause as designated and fixed by the Board is as follows:
 
 Shall there be an amendment to the Colorado constitution concerning recall of elective officials, and, in connection therewith, specifying recall and successor election procedures for state and local elective officials; stating that recalled officials shall not be any official for six years; restricting recall from the same office for an official who has already defeated a recall effort; requiring opposition donations and spending to continue to be public records; and prohibiting identification, reporting, or limitation of donations to recall campaigns and payments to recall petition circulators?

These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 

Colorado Supreme Court Opinions || April 25, 2016

Back