Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 17, 2019

**2019 CO 57**

**No. 19SA25, *In re Ballot Title #3*—Title Setting—Single Subject Requirement—Ballot Initiatives.**

This appeal requires the supreme court to decide whether the Title Board erred in declining to set a title for proposed Initiative 2019-2020 #3.  The proposed initiative reads, in full, "Be it Enacted by the People of the State of Colorado: Section 1.  In the constitution of the state of Colorado, repeal section 20 of article X."  The Title Board declined to set a title for this initiative because it concluded that the initiative did not constitute a single subject as required by the Colorado Constitution.

Applying settled principles for determining whether a proposed initiative constitutes a single subject, the court now reverses the Title Board.  The court concludes that the initiative, which would ask voters the single question of whether the Tax Payer's Bill of Rights should be repealed, constitutes a single subject.  To the extent that prior decisions from the court have said that if a constitutional provision contains multiple subjects and an initiative proposes to repeal the entire underlying provision, then the initiative contains multiple subjects, the court concludes that those decisions are not

binding under principles of stare decisis and are not analytically sound, and it disapproves them.

The court therefore returns the initiative to the Title Board for the purpose of setting a title, ballot title, and submission clause.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

---

### 2019 CO 57

---

### Supreme Court Case No. 19SA25

*Original Proceeding Pursuant to § 1-40-107(2), C.R.S. (2018)*
Appeal from the Ballot Title Setting Board

In the Matter of the Title, Ballot Title and Submission Clause for 2019–2020 #3

**Petitioners:**

Carol Hedges and Steve Briggs,

v.

**Title Board:**

Ben Schler, LeeAnn Morrill, and Jason Gelender.

---

### Title Board Action Reversed

*en banc*
June 17, 2019

---

**Attorneys for Petitioners:**
Tierney Lawrence LLC
Edward T. Ramey
Martha M. Tierney
*Denver, Colorado*

**Attorneys for Title Board:**
Philip J. Weiser, Attorney General
Emily B. Buckley, Assistant Attorney General
*Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.
**JUSTICE MÁRQUEZ** dissents and **JUSTICE BOATRIGHT** joins in the dissent.

¶1 Petitioners Carol Hedges and Steve Briggs are the designated representatives of the proponents of proposed Initiative 2019–2020 #3 ("Initiative #3"), which, if enacted, would repeal in its entirety the Taxpayer's Bill of Rights, section 20 of article X of the Colorado Constitution ("TABOR"). The proposed initiative reads, in full, "Be it Enacted by the People of the State of Colorado: Section 1. In the constitution of the state of Colorado, repeal section 20 of article X." The Title Board declined to set a title for this initiative because it concluded that the initiative did not constitute a single subject as required by the Colorado Constitution. Petitioners now petition this court for review.

¶2 Applying settled principles for determining whether a proposed initiative constitutes a single subject, we reverse the Title Board. We conclude that Initiative #3, which would ask voters the single question of whether TABOR should be repealed, constitutes a single subject. To the extent that prior decisions from this court have said that if a constitutional provision contains multiple subjects and an initiative proposes to repeal the entire underlying provision, then the initiative contains multiple subjects, we conclude that those decisions are not binding under principles of stare decisis and are not analytically sound, and we disapprove them.

¶3 We therefore return Initiative #3 to the Title Board for the purpose of setting a title, ballot title, and submission clause.

## I. Facts and Procedural Background

¶4 Pursuant to section 1-40-106, C.R.S. (2018), petitioners submitted proposed Initiative #3 to the Title Board for the setting of a title and submission clause. The Board held a hearing and declined to set a title, concluding that "the measure does not constitute

a single subject." Petitioners filed a motion for rehearing, requesting, as pertinent here, that the Title Board reconsider its determination that Initiative #3 contains more than a single subject. The Title Board denied the motion for rehearing.

¶5 Petitioners now petition for review pursuant to section 1-40-107(2), C.R.S. (2018).

## II. Standard of Review

¶6 "The Title Board is vested with considerable discretion in setting the title and the ballot title and submission clause[,]" and we will reverse the Board's decision only when a title is insufficient, unfair, or misleading. *In re Title, Ballot Title & Submission Clause for 2013–2014 #90,* 2014 CO 63, ¶ 8, 328 P.3d 155, 159.

¶7 In reviewing Title Board title settings, "we employ all legitimate presumptions in favor of the propriety of the Board's actions." *In re Title, Ballot Title & Submission Clause for 2009–2010 #45,* 234 P.3d 642, 645 (Colo. 2010).

¶8 In addition, in our limited review of the Title Board's actions, we do not address the merits of the proposed initiative. *In re 2013–2014 #90*, ¶ 9, 328 P.3d at 159. Nor do we suggest how it might be applied if enacted. *Id.* Rather, as pertinent here, we must examine the initiative's wording to determine whether it comports with the constitutional single-subject requirement. *See id.* In conducting this limited inquiry, we employ the general rules of statutory construction and give words and phrases their plain and ordinary meanings. *Id.*

## III. Analysis

¶9 Petitioners contend that the Title Board erred in concluding that Initiative #3 does not constitute a single subject. We agree.

3

¶10     Article V, section 1(5.5) of the Colorado Constitution provides, in pertinent part:

> No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.

*See also* § 1-40-106.5(1)(a), C.R.S. (2018) ("Section 1(5.5) of article V . . . require[s] that every constitutional amendment or law proposed by initiative . . . be limited to a single subject, which shall be clearly expressed in its title[.]").

¶11     The single-subject requirement serves two functions.

¶12     First, it is intended

> [t]o forbid the treatment of incongruous subjects in the same measure, especially the practice of putting together in one measure subjects having no necessary or proper connection, for the purpose of enlisting in support of the measure the advocates of each measure, and thus securing the enactment of measures that could not be carried upon their merits[.]

§ 1-40-106.5(1)(e)(I).

¶13     "Thus, an initiative's subject matter must be necessarily and properly connected rather than disconnected or incongruous, and the initiative will be held to violate the single subject requirement when it relates to more than one subject and has at least two distinct and separate purposes." *In re Title, Ballot Title & Submission Clause for 2015–2016 #73*, 2016 CO 24, ¶ 14, 369 P.3d 565, 568.

¶14     In this way, the single-subject requirement "prevents the proponents from combining multiple subjects to attract a 'yes' vote from voters who might vote 'no' on

4

one or more of the subjects if they were proposed separately." *In re Title, Ballot Title & Submission Clause for 2013–2014 #76*, 2014 CO 52, ¶ 8, 333 P.3d 76, 79.

¶15    Second, the single-subject requirement seeks "[t]o prevent surreptitious measures and apprise the people of the subject of each measure by the title, that is, to prevent surprise and fraud from being practiced upon voters." § 1-40-106.5(1)(e)(II).

¶16    When, in contrast, an initiative tends to effectuate one general objective or purpose, then the initiative presents only one subject. *In re 2015–2016 #73*, ¶ 17, 369 P.3d at 568. The breadth of the initiative's objective, however, is not without limits. *Id.* Thus, "[a] proponent's attempt to characterize an initiative under some general theme will not save the initiative from violating the single-subject rule if the initiative contains multiple subjects." *In re Title, Ballot Title & Submission Clause for 2009–2010 #91,* 235 P.3d 1071, 1076 (Colo. 2010).

¶17    Here, Initiative #3 satisfies all of the above-described requirements of a single-subject initiative. The initiative effectuates one and only one general objective or purpose, namely, the repeal of TABOR. *In re 2015–2016 #73*, ¶ 17, 369 P.3d at 568. It does not treat incongruous subjects in the same measure, and its subject matter is necessarily and properly connected. § 1-40-106.5(1)(e)(I); *In re 2015–2016 #73*, ¶ 14, 369 P.3d at 568. And we perceive nothing in Initiative #3 that could be deemed to be surreptitious or hidden in the measure. § 1-40-106.5(1)(e)(II). Nor can we see how Initiative #3 could be read so as to pose a risk of surprise or fraud on voters. *Id.* The initiative could not be written more simply or directly. It essentially asks voters a single question: should TABOR be repealed in full?

¶18    For these reasons, we conclude that Initiative #3 constitutes a single subject as required by article V, section 1(5.5) of the Colorado Constitution, and that the Title Board erred in finding otherwise.

¶19    In so ruling, we emphasize that we are not adopting an exception to the single-subject rule for repeal measures.  Rather, as our above analysis demonstrates, we are merely applying settled principles of our single-subject jurisprudence to the initiative now before us.  Moreover, to conclude that the initiative here comprises multiple subjects would require us to read language into the initiative that is not there and to address the merits of that initiative and suggest how it might be applied if enacted.  As noted above, however, we are not permitted to do so.  *See In re 2013–2014 #90*, ¶ 9, 328 P.3d at 159.

¶20    Notwithstanding the foregoing, the Title Board correctly notes that we have previously stated that if a constitutional provision contains multiple subjects and an initiative proposes to repeal the entire underlying provision, then the initiative contains multiple subjects.  *See, e.g., In re 2013–2014 #76*, ¶ 7, 333 P.3d at 78–79; *In re Title, Ballot Title & Submission Clause for Proposed Initiative 2001–02 #43*, 46 P.3d 438, 447 (Colo. 2002); *In re Title, Ballot Title & Submission Clause & Summary for 1999–2000 #104*, 987 P.2d 249, 254 (Colo. 1999).

¶21    Notably, each of the above-cited cases states this proposition without any analysis.  *See In re 2013–2014 #76*, ¶ 7, 333 P.3d at 78–79; *In re 2001–02 #43*, 46 P.3d at 447; *In re 1999–2000 #104*, 987 P.2d at 254.  Instead, these cases simply cite *In re Proposed Initiative 1996-4*, 916 P.2d 528, 533 (Colo. 1996), or cases that themselves cited *In re Proposed Initiative 1996-4*, albeit without discussion.  *See In re 2013–2014 #76*, ¶ 7, 333 P.3d at 7879;

6

*In re 2001–02 #43*, 46 P.3d at 447; *In re 1999–2000 #104*, 987 P.2d at 254. The question presented in this case thus requires us to determine whether *In re Proposed Initiative 1996-4* controls here.

¶22    In *In re Proposed Initiative 1996-4*, 916 P.2d at 530–31, the proponents submitted a proposed initiative that, if passed, would have repealed *and reenacted several individual and expressly identified* provisions of TABOR. The Title Board concluded that the initiative failed the single-subject requirement, and the proponents filed a petition for review in this court. *Id.* at 531. We ultimately upheld the Title Board's refusal to set a title, concluding that the initiative violated the single-subject rule. *Id.* at 534.

¶23    As pertinent here, we began by setting out the law relating to the single-subject requirement. *See id.* at 532. Turning to the initiative at issue, we then stated:

> The underlying constitutional provision to be repealed must be examined in order to determine whether the repealing and reenacting initiative contains a single subject. *If, for example, a constitutional provision contains multiple subjects and an initiative proposes to repeal the entire underlying provision, then the initiative contains multiple subjects.* On the other hand, if an initiative proposes anything less than a total repeal, it may satisfy the single subject requirement.

*Id.* at 533 (emphasis added).

¶24    We proceeded to observe that the initiative at issue did *not* seek a total repeal of TABOR. *Id.* Accordingly, the comment italicized above did not dispose of the case then before us, and we were required to examine the proposed initiative to determine whether it satisfied the single-subject rule. *Id.* We concluded on the facts there before us that it did not because the initiative proposed repealing and reenacting topics related to spending and revenue limits, elections, local responsibility for state-mandated programs,

7

and emergency reserves, which we viewed as "multiple subjects disconnected from any encompassing principle." *Id.*

¶25 For several reasons, *In re Proposed Initiative 1996-4* does not control here.

¶26 First, the case involved an initiative that sought both to repeal and to reenact certain individual provisions of TABOR. The initiative at issue there did not seek to repeal TABOR as a whole, as is the case here. Accordingly, the initiative required voters to vote yes on all of the individual and expressly identified subjects or no on all of them, even though some voters might have preferred to vote yes on some and no on others. As noted above, the single-subject requirement was designed, in part, to avoid exactly this scenario. *See In re 2013–2014 #76*, ¶ 8, 333 P.3d at 79. This concern is not present in a case like this, however, when voters are asked to vote yes or no on a constitutional provision as a whole.

¶27 Second, to the extent that *In re Proposed Initiative 1996-4* commented on initiatives that seek to repeal in their entirety constitutional provisions containing multiple subjects, that comment was dicta, and principles of stare decisis therefore do not apply. *See, e.g.,* *Coon v. Berger*, 588 P.2d 386, 387 (Colo. App. 1978) ("Since [the] prior opinion is only Stare [sic] decisis on the point decided, any expression of opinion on a question not necessary for the decision is merely Obiter [sic] dictum, and is not, in any way, controlling upon later decisions."), *aff'd,* 606 P.2d 68 (Colo. 1980); *see also People in Int. of Clinton*, 762 P.2d 1381, 1385 (Colo. 1988) (noting that when language in an opinion "was not necessary to the disposition of the issues presented," such language "should be recognized as dictum without precedential effect").

¶28 For similar reasons, the cases that have cited *In re Proposed Initiative 1996-4*'s comment regarding initiatives that seek to repeal in their entirety constitutional provisions containing multiple subjects do not control here. As noted above, those cases recited this comment in dicta and without any analysis. They simply cited *In re Proposed Initiative 1996-4* or cases that themselves cited that case.

¶29 *In re 2013–2014 #76*, ¶ 31, 333 P.3d at 85, is illustrative of this point. The initiative at issue in that case proposed to repeal and reenact the constitutional provision setting forth how government officials may be recalled and to whom the provision applied. *See id.* at ¶ 4 & app., 333 P.3d at 78, 86–88. Although the Title Board had found that the initiative comprised a single subject, we reversed, concluding that the initiative at issue contained multiple subjects. *Id.* at ¶¶ 3–5, 31, 333 P.3d at 78, 84–85. In reaching this conclusion, we noted that the single-subject requirement was added to the constitution in response to TABOR, which we described as a multiple-subject measure. *Id.* at ¶ 31, 333 P.3d at 84–85. We then added that after the voters approved the institution of the single-subject requirement, "we held that repeal of the multiple subjects enacted by [TABOR] could not be accomplished through a single initiative." *Id.* at ¶ 31, 333 P.3d at 85 (citing *In re 2001–02 #43*, 46 P.3d at 447).

¶30 Not only was this statement dicta, but also it was incorrect because we did not so "hold" in *In re 2001–02 #43*, 46 P.3d at 447. *In re 2001–02 #43* involved proposed initiatives that established procedures governing the exercise of the right to petition but also included, as pertinent here, a provision that exempted from the new procedures "voter-approved petitions already ruled by the supreme court to be multiple subjects."

9

*Id.* at 443–45. Although the initiative did not expressly say so, this provision would have precluded any initiative seeking the wholesale repeal of TABOR. *Id.* at 445, 447. We described this as "the epitome of a surreptitious measure." *Id.* at 447. We then added that an amendment to the Constitution that prevents the repeal of TABOR constitutes multiple subjects. *Id.* In support of this proposition, we quoted our statement in *In re Proposed Initiative 1996-4* that if "a constitutional provision contains multiple subjects and an initiative proposes to repeal the underlying provision, then the initiative contains multiple subjects." *Id.* (quoting *In re Proposed Initiative 1996-4*, 916 P.2d at 533).

¶31 This statement, like the similar statement in *In re 2013–2014 #76*, ¶ 31, 333 P.3d at 85, was dicta because the pertinent conclusion in *In re 2001–02 #43* was simply that the initiative at issue comprised multiple subjects, given that it contained a surreptitious measure concealed within "an obscure line in the initiative" that would have surprised voters who supported the initiative. 46 P.3d at 447. We did not hold that the repeal of the multiple subjects enacted by TABOR (or of any other constitutional provision) could not be accomplished through a single initiative. Nor did we provide any analysis of that issue.

¶32 Because, for the reasons previously discussed, the comment in *In re Proposed Initiative 1996-4* was dicta, and because the later cases simply cited this comment in dicta and without conducting any analyses of their own, those cases are not binding on us either. *See Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) (noting that because the Court had "never squarely addressed" a certain issue and had at most assumed the applicability of the pertinent standard, it was "free to address the issue on the merits"); *Edelman v.*

10

*Jordan*, 415 U.S. 651, 671 (1974) (noting that the Court's "summary affirmances" of lower court decisions "are not of the same precedential value as would be an opinion of this Court treating the question on the merits"); *see also People v. Delage*, 2018 CO 45, ¶ 10, 418 P.3d 1178, 1180 (noting that although prior decisions had suggested that the court had adopted a clear and convincing standard of proof in a particular context, the court had never actually done so, and therefore it was free to address the question of the proper standard, which was squarely presented in the case before it).

¶33 The question nonetheless remains whether we should adopt the comment recited in *In re Proposed Initiative 1996-4*. For several reasons, we decline to do so.

¶34 First, for the reasons set forth above, a one-sentence initiative asking voters to decide if a constitutional provision should be repealed meets all of the requirements of a single subject and, indeed, on its face reflects a single subject.

¶35 Second, we perceive no basis for creating what we perceive would be a unique single-subject rule for efforts to repeal constitutional provisions, whether or not such provisions contain multiple subjects. This is particularly true in a case like this, where TABOR, albeit arguably a multi-subject provision, *see In re Title, Ballot Title & Submission Clause & Summary*, 900 P.2d 121, 126 (Colo. 1995), was adopted by the voters as a single provision. In our view, the above-described principles on which this court has relied for determining whether an initiative contains a single subject are sufficient to guide the Title Board, future proponents, those who oppose them, and courts regarding whether a proposed initiative that seeks to repeal a pre-existing constitutional provision itself contains multiple subjects.

11

¶36   Third, concluding that an initiative contains multiple subjects merely because the targeted provision contained multiple subjects effectively makes the original provision impervious to challenge. As Justice Mullarkey noted in her concurrence in *In re Proposed Initiative 1996-4*, 916 P.2d at 537 n.3 (Mullarkey, J., concurring in the result), such an interpretation would require citizens to repeal such provisions "in a piecemeal fashion." This would make it exceptionally difficult, if not impossible, to repeal a constitutional provision like TABOR, which consists of numerous, albeit interrelated, subparts. Moreover, such a requirement could result in some portions of a constitutional provision being repealed while leaving in effect other portions of that provision that are dependent on the repealed portions. *Id.* Such a process could cause the very problem that the single-subject requirement is designed to avoid, namely, voter surprise.

¶37   In addition, requiring initiative proponents to seek to repeal a constitutional provision in a piecemeal fashion would likely prove prohibitively expensive because such a process would require the proponents to submit a series of initiatives to the Title Board and, if they succeeded there, to navigate on a repeated basis the signature-gathering process necessary to get their initiatives on the ballot. This would likely deter many would-be proponents from pursuing what might well be legitimate efforts to repeal an existing constitutional provision. We perceive no justifiable purpose for erecting such roadblocks in the initiative process or for making any constitutional provision virtually impervious to challenge by the very voters who had the power to enact such provisions in the first place.

12

¶38　For these reasons, we decline to adopt a rule that would presume that an initiative contains multiple subjects merely because it is aimed at repealing in its entirety a constitutional provision that contains multiple subjects.  To the extent that any of our prior cases have suggested otherwise, we disapprove those cases.

¶39　Accordingly, we conclude that Initiative #3 satisfies our constitution's single-subject requirement.

## IV.  Conclusion

¶40　Because Initiative #3 effectuates one general objective or purpose, does not treat incongruous subjects in the same measure, comprises subject matter that is necessarily and properly connected, contains nothing surreptitious or hidden, and presents no risk of surprise or fraud on voters, we conclude that this initiative comprises a single subject within the meaning of the Colorado Constitution.  Accordingly, we reverse the Title Board's contrary determination and return Initiative #3 to that Board for the purpose of setting a title, ballot title, and submission clause.

**JUSTICE MÁRQUEZ** dissents and **JUSTICE BOATRIGHT** joins in the dissent.

JUSTICE MÁRQUEZ, dissenting.

¶41    In holding that Initiative #3 constitutes a single subject, the majority rewrites history, the text of article V, section 1(5.5) of the Colorado Constitution, and close to a quarter century of this court's case law.  The majority overlooks the origins of the single subject requirement and the role the Taxpayer's Bill of Rights (TABOR) played as an impetus for that constitutional amendment.  It contradicts the text of the single subject requirement by inventing a new exception for repeal measures and, remarkably, it justifies doing so using the very policy arguments that Colorado voters rejected when they adopted the single subject amendment.  And along the way, the majority brushes aside a host of this court's prior decisions, recharacterizing our holdings as dicta.

¶42    As with any initiative we are tasked to review at the title setting stage, the wisdom of TABOR is not before us.  Assuming the proponents of Initiative #3 gather enough signatures to place it on the ballot for a vote, TABOR's fate remains to be seen at the polls.  Regardless, my concern is that today's ruling undermines much of our single subject jurisprudence and substantially weakens the single subject requirement.  Because the majority's analysis defies logic, the constitution, and decades of this court's case law,  I respectfully dissent.

## A. The Single Subject Requirement Applies to All Initiatives Without Exception

¶43    Article V, section 1 of the Colorado Constitution reserves the legislative power of initiative to the people of Colorado.  The single subject requirement for citizen initiatives appears in article V, section 1(5.5), which states:

1

> *No measure* shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title . . . . *If a measure contains more than one subject*, such that a ballot title cannot be fixed that clearly expresses a single subject, *no title shall be set* and the measure shall not be submitted to the people for adoption or rejection at the polls.

Colo. Const. art. V, § 1(5.5) (emphases added).

¶44 Like the single subject requirement that applies to bills introduced in the General Assembly, *see* Colo. Const. art. V, § 21 ("No bill, except general appropriations bills, shall be passed containing more than one subject."), article V, section 1(5.5) bars a single initiative from addressing disconnected and incongruous measures that have no necessary or proper connection. *In re Title, Ballot Title, & Submission Clause for Proposed Initiative 2001-02 #43*, 46 P.3d 438, 440 (Colo. 2002); *see also Catron v. Bd. of Cty. Commr's.*, 33 P. 513, 514 (Colo. 1893); *In re Breene*, 24 P. 3, 3 (Colo. 1890). A proposed initiative therefore violates the single subject requirement if it relates to more than one subject and has at least two distinct and separate purposes that are not dependent upon or connected with each other. *Proposed Initiative 2001-02 #43*, 46 P.3d at 441.

¶45 *All* voter initiatives must comply with the single subject requirement. The plain text of the single subject requirement permits no exceptions. Indeed, we have made quite clear that nothing in article V, section 1(5.5) or its implementing statutory provision, section 1-40-106.5, C.R.S. (2018), "creates any exemptions for initiatives that attempt to repeal constitutional provisions." *In re Proposed Initiative 1996-4*, 916 P.2d 528, 532 (Colo. 1996). And it is "well established" that a "measure" as used in article V, section 1(5.5) "includes initiatives that either enact or repeal." *Id.*; *see also In re Senate Resolution #4*, 130 P. 333, 336 (Colo. 1913) (stating that "[a]n act repealing an act is a measure").

2

¶46    Importantly, "we must sufficiently examine an initiative to determine whether or not the constitutional prohibition against initiative proposals containing multiple subjects has been violated."  *In the Matter of Title, Ballot Title, & Submission Clause, Summary for 1997–98 #30*, 959 P.2d 822, 825 (Colo. 1998).  This necessarily requires us to "engage in some substantive inquiry" into the underlying initiative to understand what it encompasses.  *Id.* at 825 n.2.

## B. TABOR Contains Multiple Subjects

¶47    Adopted by Colorado voters in 1992, TABOR is codified at article X, section 20 of the Colorado Constitution.  Although popularly understood as requiring voter approval for tax hikes, TABOR implicates several aspects of the government's ability to raise and spend revenue.

¶48    The 1992 ballot title for TABOR described the measure as

> [a]n amendment to the Colorado Constitution to require voter approval for certain state and local government tax revenue increases and debt; to restrict property, income, and other taxes; to limit the rate of increase in state and local government spending; to allow additional initiative and referendum elections; and to provide for the mailing of information to registered voters.

Legislative Council, Colo. Gen. Assembly, Research Pub. No. 369, *An Analysis of 1992 Ballot Proposals* 5 (1992) ("1992 Blue Book").  The 1992 Blue Book catalogued the assortment of state and local government spending and taxing powers implicated by TABOR: voter approval of tax increases and debt; state and local government spending limits; local revenue limits; prohibited taxes; taxpayer refunds; emergency taxes and emergency reserves; election procedures and required ballot information; state

3

mandates; and requirements related to the assessment of property. *Id.* at 5–6. TABOR's breadth is immense, its subject matter complex.

¶49 More recently, an article from *The Colorado Sun* summarized the omnibus nature of TABOR:

> [TABOR] requires voter approval for tax hikes or government debt. It caps government growth from year to year. It prohibits real estate transaction taxes and tiered tax brackets based on someone's income. It also directs when and how to conduct different kinds of elections. (TABOR itself was adopted before voters instituted the single subject rule, so it wasn't bound by the same restrictions.)

Brian Eason, *The TABOR Battle Is Reaching New Levels. Critics Are Testing 18 Ways To Rewrite Colorado Tax Policy*, Colo. Sun (June 9, 2019), https://perma.cc/7YS5-49G9.

¶50 Without question, TABOR contains more than a single subject. We have expressly said as much, describing TABOR as a "multiple subject measure" that "changed the approval process for new taxes, established revenue limits, and imposed refund requirements," among other things. *In re Title, Ballot Title, & Submission Clause for 2013-2014 #76*, 2014 CO 52, ¶ 31, 333 P.3d 76, 85; *see also In re Amend Tabor 25*, 900 P.2d 121, 126 (Colo. 1995) (rejecting Title Board's argument that TABOR is a single issue measure, and concluding that TABOR "contains multiple subjects").

## C. TABOR Served as an Impetus for the Adoption of the Single Subject Requirement in Article V, Section 1(5.5)

¶51 TABOR's very complexity served as an impetus for Colorado voters' 1994 adoption of the single subject rule for citizen initiatives. Identified on the ballot as "Referendum A," the legislature's referred measure was described as "an amendment to

4

articles V and XIX[1] of the Constitution of the State of Colorado, requiring that any measure proposed by initiative or referendum be confined to a single subject." Legislative Council, Colo. Gen. Assembly, Research Pub. No. 392, *An Analysis of 1994 Ballot Proposals* 2 (1994) ("1994 Blue Book").

¶52 The 1994 Blue Book summary of the measure specifically identified TABOR as a proposal that could be considered to "include more than one subject," observing that TABOR encompassed "provisions relating to taxes, elections, state-mandated programs, and spending and revenue limitations." *Id.* at 3. Indeed, it described TABOR as an example of an initiative that, under Referendum A, "might not have been allowed unless [it was] changed to reduce [its] scope." *Id.*

¶53 This court has expressly recognized the connection between the 1992 adoption of TABOR and the voters' adoption of the single subject amendment at the very next general election. Not long after TABOR's adoption, we observed, for example, that, "[b]y the passage of Referendum A, the people in 1994 sought to avoid future constitutional provisions that are too broad so as to touch upon several matters." *Amend Tabor 25*, 900 P.2d at 126. We noted that TABOR itself "was not subject to the single subject requirement and contains multiple subjects." *Id.*

---

[1] Article XIX of the Colorado Constitution concerns the method by which constitutional amendments are made.

¶54   The majority essentially overlooks this important historical contextual point: in adopting the single subject requirement for citizen initiatives, voters sought to prevent multi-subject initiatives *like TABOR* from being placed on the ballot in the future. Yet ironically, today the majority blesses an initiative that would, once again, place all of TABOR on the ballot, directly contrary to the intent of the single subject requirement.

### D. Our Case Law Has Consistently Held That Repeal of a Multiple Subject Measure Violates the Single Subject Requirement

¶55   In 1996, two years after the single subject amendment was enacted and four years after TABOR was adopted, citizens brought an initiative seeking a repeal and partial reenactment of TABOR. The Title Board concluded that the initiative failed the single subject requirement, and the proponents petitioned this court for review. *Proposed Initiative 1996-4*, 916 P.2d at 532. We upheld the Title Board's refusal to set a title, concluding that the initiative violated the single subject rule. *Id.* at 534.

¶56   In reaching that conclusion, we observed that there are no exceptions to the single subject requirement either for repeal initiatives or for measures that target constitutional provisions that were adopted before the single subject rule was enacted:

> *All initiatives must comply with the single subject requirement.* Colo. Const. art V, § 1(5.5). Neither the constitutional language nor section 1–40–106.5 creates any exemptions for initiatives that attempt to *repeal* constitutional provisions. Also, *no special permission exists for initiatives that seek to address constitutional provisions adopted prior to the enactment of the single subject requirement.* On the contrary, article V, section 1(5.5) specifically states that "[n]o measure shall be proposed by petition containing more than one subject . . . ." Section 1–40–106.5 requires "every constitutional amendment or law proposed by initiative . . . be limited to a single subject . . . ."

6

*Id.* at 532 (emphases added).

¶57    Turning to the initiative in that case, we concluded that it contained multiple subjects because it proposed "repealing topics related to spending and revenue limits, elections, local responsibility for state mandated programs, and emergency reserves." *Id.* at 533. We rejected the proponents' contention that each repealed subsection would address the single subject of "limiting government spending." *Id.* In other words, the multiple *repealed* subjects themselves violated the single subject requirement; that the initiative also sought to reenact parts of TABOR only amplified the problem. Accordingly, we upheld the Title Board's refusal to set a title. *Id.* at 534.

¶58    In short, we held in *Proposed Initiative 1996-4* that the proposed effective *partial* repeal of TABOR addressed multiple subjects and thus ran afoul of the single subject rule. *Id.* at 532–34. That holding was not dicta. Nor were our statements that the single subject requirement applies to repeal measures, and that no special exceptions exist for initiatives that predated the adoption of the single subject requirement. *Id.* at 532. These statements were necessary to our rationale.

¶59    True, in our discussion, we noted that a *full* repeal of a multiple subject measure would violate the single subject rule. *Id.* at 533 ("If, for example, a constitutional provision contains multiple subjects and an initiative process proposes to repeal the entire underlying provisions, then the initiative contains multiple subjects."). Although dicta, this statement represented the obvious and logical implication of our holding in that case. Put simply, if a partial repeal of a multiple subject provision violates the single subject amendment, then surely a full repeal does as well.

7

¶60 The majority focuses on a single line of dicta in *Proposed Initiative 1996-4* but in so doing, ignores the actual holding of the case. Maj. op. ¶ 38. Yet our later opinions have relied on *Proposed Initiative 1996-4* and its underlying logic as stare decisis.

¶61 For example, since our decision in that case, we have repeatedly acknowledged that repeal measures are bound by the single subject requirement. *See, e.g.*, *In re Title, Ballot Title, & Submission Clause, & Summary for 1999-2000 #104*, 987 P.2d 249, 254 (Colo. 1999) ("[A] proposed initiative contains multiple subjects not only when it proposes *new* provisions constituting multiple subjects, but also when it proposes to *repeal* multiple subjects."); *In re Title, Ballot Title, & Submission Clause for 2011-2012 #45*, 2012 CO 26, ¶ 28, 274 P.3d 576, 584 ("For initiatives seeking to repeal constitutional provisions, we examine the underlying constitutional provision in order to determine whether the repealing initiative contains a single subject."). Until today, we have never said that repeal measures are exempt from the single subject requirement.

¶62 And in *Proposed Initiative 2001-02 #43*, we relied in part on *Proposed Initiative 1996-4* to hold that an initiative designed in part to *prevent* the repeal of TABOR contains multiple subjects. Although we concluded that this aspect of the initiative constituted a separate subject, we also observed that

> *an amendment to the Colorado Constitution which prevents the repeal of TABOR itself constitutes multiple subjects in violation of article V, section 1(5.5)*. TABOR contains multiple subjects. *In re Proposed Initiative Amend TABOR 25*, 900 P.2d at 126. If "a constitutional provision contains multiple subjects and an initiative proposes to repeal the entire underlying provision, then the initiative contains multiple subjects." 916 P.2d at 533. It follows that an initiative proposing to prevent the repeal of a constitutional provision containing multiple subjects also contains multiple subjects. *Therefore, an*

8

*initiative proposing to prevent the wholesale repeal of TABOR contains multiple subjects.*

46 P.3d at 447 (emphases added).

¶63 Indeed, as recently as five years ago, we reaffirmed our holding in *Proposed Initiative 1996-4* and its underlying principles in our decision in *2013-2014 #76*. There, we again signaled that a repeal of TABOR's multiple subjects could be accomplished only through separate proposals:

> We must give effect to the voters' intent in amending the Colorado Constitution to include the single subject requirement for ballot initiatives. This amendment to the constitution occurred after the voters approved a 1992 initiative, which its proponents called "The Taxpayer's Bill of Rights" (referred to as "TABOR" or "Amendment 1" in our case law), a *multiple subject measure* that changed the approval process for new taxes, established revenue limits, and imposed refund requirements, among other provisions. *After the voters approved the institution of the single subject requirement in 1994, we held that repeal of the multiple subjects enacted by Amendment 1 could not be accomplished through a single initiative. Repeal of Amendment 1's multiple subjects would have to be accomplished, if at all, through separate proposals.*

*2013-2014 #76*, ¶ 31, 333 P.3d at 85 (emphases added).

### E. The Majority Effectively Overrules Decades of This Court's Case Law Without Justification

¶64 The majority reasons that "to the extent that *In re Proposed Initiative 1996-4* commented on initiatives that seek to repeal in their entirety constitutional provisions containing multiple subjects, that comment was dicta, and principles of stare decisis therefore do not apply." Maj. op. ¶ 27. Yet by ignoring our actual holding and rationale in *Proposed Initiative 1996-4*, the majority blithely deems decisions spanning close to a quarter century that have relied on that precedent as not "analytically sound," and

9

"disapprove[s]" an entire body of this court's case law. Maj. op. ¶ 2. In reality, today's decision necessarily overrules those cases, and does so without justification or regard for principles of stare decisis. The majority's reasoning simply does not withstand scrutiny, for a host of reasons.

¶65 First and foremost, the majority's analysis defies logic. The majority concludes that *Proposed Initiative 1996-4* does not control here because "[that] case involved an initiative that sought both to repeal and to reenact certain individual provisions of TABOR. The initiative at issue there did not seek to repeal TABOR as a whole, as is the case here." Maj. op. ¶ 26. But if we held in *Proposed Initiative 1996-4* that a partial repeal of TABOR violates the single subject rule, how is it logically possible that a full repeal somehow does not?

¶66 Given the breadth of TABOR, it is not difficult to demonstrate why its repeal in total violates the very purpose of the single subject requirement. The majority observes that the initiative at issue *in Proposed Initiative 1996-4* "required voters to vote yes on all of the individual and expressly identified subjects or no on all of them, even though some voters might have preferred to vote yes on some and no on others." Maj. op. ¶ 26. It then opines that "[t]his concern is not present in a case like this, however, when voters are asked to vote yes or no on a constitutional provision as a whole." *Id.* How so? If the 1996 initiative, which proposed repealing only certain parts of TABOR required voters to vote yes on all of the individual subjects or no on all of them, then Initiative #3, which proposes repealing all of TABOR, plainly suffers the same defect. For example, a voter may want to retain TABOR's voter approval requirement for tax increases but may want to repeal

10

TABOR's prohibition on tiered tax brackets based on income. A complete repeal of TABOR eliminates this choice.

¶67 The majority also claims that "a one-sentence initiative asking voters to decide if a constitutional provision should be repealed meets all of the requirements of a single subject and, indeed, *on its face* reflects a single subject." Maj. op. ¶ 34 (emphasis added). But the majority has it backwards. An initiative that unquestionably encompasses multiple subjects, yet on "its face reflects a single subject," is precisely the type of measure that risks "passage of a surreptitious provision 'coiled up in the folds' of a complex bill." *Proposed Initiative 2001-02 #43*, 46 P.3d at 440 (quoting *Breene*, 24 P. at 4). Lumping several subjects under a single label ("TABOR") and packaging the proposal as a repeal changes nothing. "A proponent's attempt to characterize an initiative under some general theme will not save an initiative from violating the single subject rule if the initiative contains multiple subjects." *In re Title, Ballot Title, Submission Clause for 2009-2010 #91*, 235 P.3d 1071, 1076 (Colo. 2010).

¶68 The majority suggests it is being asked to create a "unique single-subject rule for efforts to repeal constitutional provisions." Maj. op. ¶ 35. In reality, the majority creates today a new *exception* to the single subject rule for repeal measures—despite its insistence that it is not doing so. *Id.* at ¶ 19. This new exception finds no anchor in the constitutional text and directly contradicts our prior case law. As discussed, we have made clear that "[a]ll initiatives must comply with the single subject requirement," and nothing in article V, section 1(5.5) "creates any exemptions for initiatives that attempt to repeal constitutional provisions." *Proposed Initiative 1996-4*, 916 P.2d at 532. The plain and

11

unambiguous language of the single subject requirement answers the question we are presented with today.

¶69 Remarkably, the majority also relies on policy arguments that Colorado voters rejected when they adopted the single subject requirement in 1994. The majority reasons, for example, that to conclude that a repeal initiative "contains multiple subjects merely because the targeted provision contained multiple subjects effectively makes the original provision impervious to challenge," and that such an approach would force repeal efforts to proceed in a piecemeal fashion. Maj. op. ¶¶ 36–37.

¶70 But the 1994 Blue Book expressly cautioned voters that, if enacted, the single subject requirement would preclude the comprehensive revision of existing complex constitutional provisions, and instead would force piecemeal revisions:

> *This amendment will inhibit the ability of citizens and the legislature to present comprehensive revisions to Colorado law to the voters. In order to change a complex area of the law, more than one question may need to be on the ballot or more than one election may be necessary.* If several amendments are necessary to change various aspects of state government, for example a complex subject such as the personnel system, it may be important to include a number of topics within one proposal and to have a consensus of number of groups in order for the changes to be adopted. *This proposal works against achieving system wide changes because complex reforms cannot realistically be accomplished on a piecemeal basis or in a series of elections.*

1994 Blue Book at 4 (emphases added).

¶71 Thus, voters were well aware of the consequences of the single subject rule. *See Carrara Place, Ltd. v. Arapahoe Cty. Bd. of Equalization*, 761 P.2d 197, 203 (Colo. 1988) (discussing Blue Book summary of proposed amendment and noting that "the legislative council's interpretation, while not binding, provides important insight into the

12

electorate's understanding of the amendment when it was passed"). Armed with this understanding, voters passed the measure anyway.

¶72 The majority fails to mention that in *Proposed Initiative 1996-4*, we expressly rejected the proponents' argument that "requiring strict compliance with the single subject requirement to a repealing initiative precludes extensive modification of existing constitutional provisions" and that to apply the single subject requirement to constitutional provisions that predated the enactment of the single subject requirement would insulate those measures from significant change. 916 P.2d at 533. Quoting the 1994 Blue Book, we noted that opponents of the single subject requirement had made the same arguments against adoption of the measure, and yet, "[b]y passing the initiative, the voters rejected that argument." *Id.*

¶73 The majority nevertheless coopts the same arguments as a policy justification for its holding today, reasoning that applying the single subject rule to repeal measures that target multiple subject provisions that predate the single subject requirement "effectively makes the original provision[s] impervious to challenge," and forces piecemeal repeal efforts. Maj. op. ¶¶ 36–37. True. But that is exactly what Colorado voters bargained for when they adopted the single subject requirement with knowledge of these constraints. It is not this court's job to revisit the wisdom of the electorate's decision. Rather, we must respect the law the Colorado voters chose to adopt. By relying on the very arguments opponents raised as reasons not to adopt the single subject rule, the majority ignores the decision that Colorado voters made for themselves a quarter century ago.

¶74    Finally, I fear the majority's analysis today has broad implications. The majority does little work to explain or justify how article X, section 20, a provision that unquestionably contains multiple subjects, "does not treat incongruous subjects in the same measure, comprises subject matter that is necessarily and properly connected, contains nothing surreptitious or hidden, and presents no risk of surprise or fraud on voters." Maj. op. ¶ 40. Apparently these requirements are met simply because the initiative proposes to *repeal* the provision. But by focusing on the notion that a "repeal" presents one subject, while refusing to examine whether what is being repealed (here, the "Taxpayer Bill of Rights") consists of more than one subject, *see* maj. op. ¶ 19, the ruling today profoundly weakens the single subject requirement. To offer an extreme example, under the majority's logic, voters could repeal our state constitution's entire Bill of Rights through a single initiative and do away with religious freedom, free speech, protections against unreasonable searches and seizures, the right to bear arms, the prohibition against cruel and unusual punishment, and due process, among a host of other rights. To illustrate the point, we simply substitute a different provision for "section 20 of article X" in the proposed language of Initiative #3: "Be it Enacted by the People of the State of Colorado: Section 1. In the constitution of the state of Colorado, repeal [article II]." Under today's ruling, such an initiative, "which would ask voters the single question of whether [The Bill of Rights] should be repealed, constitutes a single subject." Maj. op. ¶ 2. Such a result cannot have been the voters' intent in adopting the single subject requirement.

14

## Conclusion

¶75    *All* voter initiatives must comply with the single subject requirement.  This court made clear long ago that nothing in article V, section 1(5.5) "creates any exemptions for initiatives that attempt to repeal constitutional provisions." *Proposed Initiative 1996-4*, 916 P.2d at 532.   Because Initiative #3 seeks to repeal TABOR, and because TABOR unquestionably encompasses multiple subjects, Initiative #3 contains multiple subjects in violation of article V, section 1(5.5) of the Colorado Constitution. The Title Board therefore quite properly refused to set a title.  I respectfully dissent.

I am authorized to state that JUSTICE BOATRIGHT joins in this dissent