FILED
**United States Court of Appeals**
**Tenth Circuit**

**April 26, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ADVANCE COLORADO, a Colorado
non-profit; GEORGE HANKS "HANK"
BROWN, an individual; STEVEN WARD,
an individual; CODY DAVIS, an
individual; JERRY SONNENBERG, an
individual; CARRIE GEITNER, an
individual,

     Plaintiffs - Appellants,

v.

JENA GRISWOLD, in her official capacity
as Secretary of State of Colorado,

     Defendant - Appellee.

No. 23-1282

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:23-CV-01999-PAB-SKC)**
_____

Jennifer H. Weddle (Troy A. Eid and Harriett McConnell Retford with her on the briefs),
Greenberg Traurig, LLP, Denver, Colorado, for Plaintiffs – Appellants.

Michael Kotlarczyk, Senior Assistant Attorney General (Philip J. Weiser, Attorney
General, and J. Greg Whitehair, Assistant Attorney General, with him on the brief),
Colorado Department of Labor, Denver, Colorado, for Defendant – Appellee.
_____

Before **McHUGH**, **MURPHY**, and **CARSON**, Circuit Judges.
_____

**MURPHY**, Circuit Judge.
_____

## I.    Introduction

In 2021, the Colorado state legislature passed The Ballot Measure Fiscal Transparency Act ("HB 21-1321"), which requires certain language be included in state-imposed titles of citizen-initiated ballot measures. Specifically, if the proposal contains a tax change affecting state or local revenues, the measure's title must incorporate a phrase stating the change's impact on state and district funding priorities. In 2023, Appellants (collectively, "Advance Colorado") proposed two tax reduction measures subject to the provisions of HB 21-1321. After Colorado's Ballot Title Setting Board (the "Title Board") included the mandated transparency language in each initiative's title, Advance Colorado filed suit challenging HB 21-1321 as unconstitutionally compelling its political speech. The district court denied the corresponding request for a preliminary injunction, concluding the titling process qualified as government speech and, therefore, Advance Colorado was not likely to succeed on the merits of its claims. We agree that HB 21-1321's requirements do not result in improperly compelled speech under the First Amendment of the United States Constitution. Thus, exercising jurisdiction pursuant to 28 U.S.C. § 1292, this court **affirms** the district court's order denying a preliminary injunction.

## II.    Background

### a.  Factual History

Colorado law offers citizens the opportunity to propose their own laws or constitutional amendments through citizen-initiated ballot measures. Colo. Const. art. V, § 1(1). Qualifying proposals under this process must complete a comment and

review period before being delivered to the Secretary of State's office for titling. Colo. Rev. Stat. §§ 1-40-105(1), 106(1). Colorado's Title Board is responsible for ensuring each proposal receives a clear and direct title. *Id*. § 1-40-106(3)(b). Ballot titles are entirely crafted by the Title Board and proposal sponsors do not submit any title language for consideration. *Id*. §§ 1-40-105(4), 106(1). Once set, titles may appear in three places: (a) the petition form used by advocates to gather signatures;[1] (b) an official non-partisan voter information booklet; and (c) the ballot itself. *Id*. at § 1-40-102(2), 110(2); Colo. Const. art. V, § 1(7.5).

After the Title Board deliberates and sets a title, dissatisfied proponents may file a motion for rehearing with the Secretary of State. Colo. Rev. Stat. § 1-40-107(1)(a)(I). If advocates disagree with the Title Board's rehearing outcome, they may further petition the Colorado Supreme Court for review. *Id*. § 1-40-107(2). Generally, however, "[t]he Title Board is vested with considerable discretion in setting the title and the ballot title and submission clause." *Cordero v. Leahy (In re Title, Ballot Title & Submission Clause for 2013-2014 #90)*, 328 P.3d 155, 159 (Colo. 2014).

HB 21-1321 implemented several rules regarding the contents of citizen-initiated ballot titles involving "tax change[s]." Colo. Rev. Stat. § 1-40-106.

---

[1] When placed on the petition for signatures, each title is preceded by the following disclaimer: "The Ballot title and submission clause as designated and fixed by the Initiative Title Setting Review Board is as follows: . . .".

HB 21-1321 includes two language requirements for initiatives implicating reductions in tax revenue:

> (e) For measures that reduce state tax revenue through a tax change, the ballot title must begin *"Shall there be a reduction to the (description of tax) by (the percentage by which the tax is reduced in the first full fiscal year that the measure reduces revenue) thereby reducing state revenue, which will reduce funding for state expenditures that include but are not limited to (the three largest areas of program expenditure) by an estimated (projected dollar figure of revenue reduction to the state in the first full fiscal year that the measure reduces revenue) in tax revenue…?"*. If the ballot measure specifies the public services or programs that are to be reduced by the tax change, those public services or programs must be stated in the ballot title. If the public services or programs identified in the measure are insufficient to account for the full dollar value of the tax change in the first full fiscal year that the measure reduces revenue, then the three largest areas of program expenditure must be stated in the bill title along with the public services or programs identified in the measure. The estimates reflected in the ballot title shall not be interpreted as restrictions of the state's budgeting process.
>
> (f) For measures that reduce local district property tax revenue through a tax change, the ballot title must begin *"Shall funding available for counties, school districts, water districts, fire districts, and other districts funded, at least in part, by property taxes be impacted by a reduction of (projected dollar figure of property tax revenue reduction to all districts in the first full fiscal year that the measure reduces revenue) in property tax revenue…?"*. The title board shall exclude any districts whose property tax revenue would not be reduced by the measure from the measure's ballot title. The estimates reflected in the ballot title shall not be interpreted as restrictions of a local district's budgeting process.

*Id*. § 1-40-106(3)(e)–(f) (emphasis added).

Advance Colorado sponsored two initiatives for the 2024 statewide ballot that proposed tax changes: Colorado Proposed Initiative 2023–2024 #21 ("Initiative 21"), which includes a limit on property tax increases; and Colorado Proposed Initiative

2023–2024 #22 ("Initiative 22"), which includes a reduction in sales and use tax rates. In April 2023, the Title Board determined both measures triggered the language requirements of HB 21-1321 and set titles accordingly. Initiative 21's title was stated as follows:

> Shall funding available for counties, school districts, water districts, fire districts, and other districts funded, at least in part, by property taxes shall be impacted by a reduction of $2.2 billion in property tax revenue by an amendment to the Colorado constitution and a change to the Colorado Revised Statutes concerning a 3% annual limit on property tax increases, and, in connection therewith, creating an exception to the limit if a property's use changes or its square footage increases by more than 10%, in which case, the property is reappraised, and, beginning in fiscal year 2024–2025, allowing the state to annually retain and spend up to $100 million of excess state revenue, if any, as a voter-approved revenue change to offset reduced property tax revenue and to reimburse local governments for fire protection?

Likewise, the Title Board set Initiative 22's title as the following:

> Shall there be a reduction to the state sales and use tax rate by 0.61 percent, thereby reducing state revenue, which will reduce funding for state expenditures that include but are not limited to education, health care policy and financing, and higher education by an estimated $101.9 million in tax revenue, by a change to the Colorado Revised Statutes concerning a reduction in state sales and use taxes, and, in connection therewith, reducing the state sales and use tax rate from 2.90 percent to 2.89 percent from July 1, 2024, through June 29, 2025, and eliminating the state sales and use tax for one day on June 30, 2025?

In accordance with policy, the Colorado Legislature Council Staff released fiscal summaries analyzing the respective economic impact of each proposal. Importantly, both measures implicate the Colorado Taxpayer's Bill of Rights ("TABOR"). Colo. Const. art. X, § 20. Among its many mandates, TABOR requires state and local governments to refund taxpayers any revenues appropriated in excess

5

of the prior year's spending. *Id*. art. X, § 20(7). Based on then-current forecasts, the Legislature Council's fiscal summary for Initiative 22 concluded the measure would not likely impact the state's overall budget. Rather, given the probability of a state revenue surplus, the measure was projected only to reduce the amount available for taxpayer refunds under TABOR. The fiscal summary for Initiative 21 identified that the measure would decrease local property tax revenue and influence school financing. It further determined the measure would increase the amount of revenue the state could retain and, in turn, decrease the amount used for TABOR refunds.

### b.  Procedural History

Following the Title Board's determinations, Advance Colorado filed motions for rehearing on both Initiative 21 and 22. The Title Board denied the motions, and Advance Colorado elected not to appeal either decision to the Colorado Supreme Court.[2] Initiative 22 became final on April 19, 2023, and after an unrelated challenge, Initiative 21 became final on May 19, 2023. Advance Colorado refused, however, to circulate any petition to gather signatures without a preliminary injunction prohibiting HB 21-1321's application.

In August 2023, Advance Colorado commenced this action, alleging HB 21-1321 unconstitutionally compelled its political speech in violation of the First

---

[2] Advance Colorado argues it already appealed a substantively similar proposal to Initiative 22 to the Colorado Supreme Court during the 2021–2022 ballot cycle. The court summarily affirmed the Title Board's determination without discussion of HB 21-1321's language requirements. As a result, Advance Colorado asserts it has functionally exhausted its state court remedies.

Amendment.[3] One week later, it filed a motion for preliminary injunctive relief, requesting that the Secretary of State convene the Title Board to reauthorize the initiatives' titles without the language mandated by HB 21-1321. Advance Colorado argued the law's requirements improperly foist oppositional political viewpoints on citizen-led ballot measures and are specifically misleading regarding Initiatives 21 and 22. Contrary to their assigned titles, Advance Colorado asserted that Initiative 21 proposes only a property tax cap, not a tax reduction; and Initiative 22 would only result in smaller TABOR refunds, not funding decreases to popular healthcare and education programming.

Following a hearing on the preliminary injunction motion, the district court concluded Advance Colorado could not show the requisite likelihood of success on the merits to grant the motion. In its analysis, the court considered the factors used for determining the boundary between government and private speech as outlined in *Shurtleff v. City of Bos.*, 596 U.S. 243, 252 (2022). Namely, it concluded the history of the expression; the public's likely perception as to who is speaking; and the extent to which the government has shaped the expression all indicated Colorado's titling system was government speech not subject to a First Amendment compelled speech

---

[3] In addition to facial and as-applied challenges under the U.S. Constitution, Advance Colorado's complaint included a third claim arising under Article V of the Colorado Constitution. It alleged HB 21-1321 violated the state's requirement that ballot titles be clear and direct. Advance Colorado failed to raise this claim in its appellate briefing, thereby rendering the issue waived. *SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1226 (10th Cir. 2009) ("An issue or argument insufficiently raised in a party's opening brief is deemed waived.").

claim. In making this determination, the court particularly pointed to the decades-long history of the Title Board's practices in Colorado; the heavy regulation of the initiative process by the state government; and limited evidence voters perceive ballot title language to be the Appellants' own, particularly in light of the disclaimer stating otherwise on petition forms. *See supra* n. 1.

### III.    Analysis

#### a.  Standard of Review

This court reviews the denial of a preliminary injunction for abuse of discretion. *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). "An abuse of discretion occurs when the district court commits an error of law or makes clearly erroneous factual findings." *Att'y Gen. of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 775 (10th Cir. 2009) (quotations omitted). In conducting this analysis, "we examine the district court's legal determinations de novo, and its underlying factual findings for clear error." *Id*. at 776.

To succeed on a motion for preliminary injunction, the moving party must establish "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) [that] the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) [that] the injunction, if issued, will not adversely affect the public interest." *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002) (quotation omitted), *abrogated on other grounds by Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276 (10th Cir. 2016). Preliminary injunctive relief is considered an "extraordinary

remedy" that requires the moving party make a "clear and unequivocal showing it is entitled to such relief." *Colorado v. U.S. Env't Prot. Agency*, 989 F.3d 874, 883 (10th Cir. 2021) (quotations omitted).[4]

### b. First Amendment Framework

To state a compelled-speech claim under the First Amendment, "a party must establish (1) speech; (2) to which [it] objects; that is (3) compelled by some governmental action." *Cressman v. Thompson*, 798 F.3d 938, 951 (10th Cir. 2015). The First Amendment, therefore, works to "restrict[] government regulation of private speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009). Similar to citizens, however, the government has a right to "speak for itself." *Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 229 (2000). In turn, purely government speech is generally "exempt from First Amendment scrutiny." *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 553 (2005).

"The boundary between government speech and private expression can blur when . . . a government invites the people to participate in a program." *Shurtleff*, 596

---

[4] Certain requests for preliminary injunctions are disfavored, including those that are mandatory, "alter the status quo," or "afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *U.S. Env't Prot. Agency*, 989 F.3d at 883–84. When reviewing a disfavored preliminary injunction request, this court requires the moving party to "make a heightened showing of the four factors." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1209 (10th Cir. 2009). Given that Advance Colorado's request aims to alter the status quo by affirmatively requiring the Secretary of State to reconvene the Title Board, the district court determined the motion was disfavored. We conclude Advance Colorado fails to show a substantial likelihood of success on the merits under the normal standard, *see infra* § III.b, and therefore need not determine whether the specific injunction requested was disfavored. *See U.S. Env't Prot. Agency*, 989 F.3d at 884.

U.S. at 252. Under such circumstances, it becomes difficult to discern when "government-public engagement" transmits the government's own message or the message of its citizen-participants. *Id*. In analyzing which side of the watershed government engagement falls, "we conduct a holistic inquiry designed to determine whether the government intends to speak for itself or to regulate private expression." *Id*. This analysis is not a mechanical "application of rigid factors," but rather looks to "a case's context." *Id*. Evidence typically used in drawing such conclusions includes "the history of the expression at issue; the public's likely perception as to who (the government or a private person) is speaking; and the extent to which the government has actively shaped or controlled the expression." *Id*.; *see also Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 208–14 (2015) (holding specialty license plate designs constitute government speech); *VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1170 (10th Cir. 2021) (holding public mayoral announcement to be government speech).

### c. Government Speech Analysis

To receive a preliminary injunction, the moving party must first demonstrate a substantial likelihood of success on the merits of its claims. *U.S. Env't Prot. Agency*, 989 F.3d at 883. Considering the evidence presented and the First Amendment framework set out in *Shurtleff*, Advance Colorado has failed to meet this standard. 596 U.S. at 252. The first and third *Shurtleff* factors—history and government control of expression—work in tandem to underscore Colorado's ballot titling qualifies as government speech. The Colorado Title Board has existed and set ballot titles in a

similar manner for over eighty years. *See* An Act Relating to the Initiative and Referendum, ch. 147, § 1, 1941 Colo. Sess. Laws 480, 480. As is the case today, when it was first formed the Title Board was solely responsible for setting a measure's title without the influence of proposal advocates. *Compare id*. *with* Colo. Rev. Stat. § 1-40-105(4). The long history of the Title Board's practices reflects the substantial control the government asserts over initiative titles and its legitimate interest in providing a standardized process for presenting measures to voters. Titling is statutorily separated and preserved as an express function of the government under Colorado law. *See id.* § 1-40-106. Despite the catalytic role played by citizens in the initiative process, ballot titles are fully and exclusively crafted by the government through the Secretary of State's office. Indeed, "[t]he fact that private parties take part in the design and propagation of a message does not extinguish the governmental nature of the message or transform the government's role into that of a mere forum-provider." *Walker*, 576 U.S. at 217. Advance Colorado has failed to offer any evidence refuting this history of substantial government control.

Advance Colorado is also unable to demonstrate that, under the second *Shurtleff* factor, the general public perceives initiative titles to be the speech of private citizen-advocates. Appellants focused their argument regarding voter confusion on signature petitions and offered limited testimonial evidence indicating citizens do not always understand the origin of title language. As the district court noted, however, Advance Colorado fails to address the disclaimer shown immediately above the ballot title indicating the language is "designated and fixed"

11

by the Title Board. *See supra* n.1. This statement plainly communicates to voters that the title is drafted by the government and does not represent the proponents' expression. Advance Colorado provides no additional evidence calling into question the public's perception of who writes the title. Given this minimal support, the robust history of titles being government expression, and the near total control the government asserts over titling, our holistic review clearly demonstrates Colorado's titling process qualifies as government speech. *Shurtleff*, 596 U.S. at 252.[5]

Advance Colorado urges this court to conclude the mandatory and misleading effect of HB 21-1321 renders the law unconstitutional under the First Amendment. HB 21-1321's requirements, it argues, inevitably mischaracterize an initiative's purpose and, as a result, compel the speech of advocates by association. Nonetheless, whether the content of the expression may be misleading does not bear on the underlying question of who owns the speech. Colorado law provides a separate, statutorily protected appeal process for proponents who believe the Title Board has

---

[5] Instead of using *Shurtleff* to analyze whether Colorado ballot titles are private speech or government speech, Advance Colorado urges this court to analogize the issue to government regulations on political speech or limitations on commercial disclosures. The authority it provides, however, is of limited use because these cases contemplate clearly private or commercial speech. *See, e.g.*, *Cal. Democratic Party v. Jones*, 530 U.S. 567 (2000) (considering government regulation of political association on ballots); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) (analyzing distribution of anonymous political literature); *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct.*, 471 U.S. 626, 651 (1985) (reviewing government disclosure requirements imposed on commercial entities). Here, we confront purely government speech, not government regulation of private speech. Thus, this court finds Advance Colorado's private political speech and commercial disclosure authority unavailing.

provided a substantively unfair title. *See, e.g.*, *Bruce v. Hedges (In re Ballot Title & Submission Clause for 2019-2020 #3 "State Fiscal Policy")*, 454 P.3d 1056, 1060 (Colo. 2019) (considering whether a ballot measure aiming to repeal TABOR was clear). The Free Speech Clause, however, typically "does not regulate government speech." *Summum*, 555 U.S. at 467. Under *Shurtleff*, the Colorado initiative titling system squarely qualifies as government speech and Advance Colorado has not otherwise shown its own speech was improperly compelled by the government speech.[6] Accordingly, it cannot demonstrate a substantial likelihood of success on the merits of its claims and, therefore, the district court did not abuse its discretion in denying the preliminary injunction.

## IV.    Conclusion

The order denying Advance Colorado's request for a preliminary injunction by the United States District Court for the District of Colorado is hereby **affirmed**.[7]

---

[6] Indeed, even if speech is the government's own, it may still violate the First Amendment if it "compel[s] private persons to convey the government's speech." *Cressman*, 798 F.3d at 949 (quotation omitted); *see also Semple v. Griswold*, 934 F.3d 1134, 1143 (10th Cir. 2019) (holding government measures are improperly compulsory when they punish or threaten to punish protected speech through regulatory or proscriptive acts). With the exception of limited discussion in its reply briefing, Advance Colorado has consistently asserted that the ballot titles are its own private speech and has not argued, in the alternative, that they are improperly compulsory government speech. Given this lack of argument, this court treats the issue as waived. *See SCO Grp., Inc.*, 578 F.3d at 1226; *Star Fuel Marts, LLC v. Sam's E., Inc.*, 362 F.3d 639, 647 (10th Cir. 2004) ("Generally, arguments raised for the first time on appeal in an appellant's reply brief are waived.").

[7] Given the disposition of this appeal, Advance Colorado's Motion to Expedite Review of this case is denied as moot.

13